Application of Carl Dalton LUNSFORD.
Patent Appeal No. 7105.

United States Court of Customs
and Patent Appeals.
Feb. 13, 1964.

Gordon W. Hueschen, Kalamazoo, Mich., for appellant.

Clarence W. Moore, Washington, D. C. (J. E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1, 2, 5, 10, 11, 22 and 23 in application serial No. 799,-441 filed March 16, 1959 for BASIC ESTERS OF 3–ARYL–3–PYRROLIDI-NOLS. Three claims were allowed by the examiner.

Appellant's application is directed to certain acyloxy derivatives of 3–aryl–3–pyrrolidinols. The specification states that representative compounds of appellant's invention "exhibit a predominant utility and activity as anodyne type antitussive agents[1] or expectorants in animals." It is further stated that the compounds of the invention exhibit a low order of analgesic effect.[2]

Claim 1, which is representative of appellant's acyloxy derivatives and of the appealed claims, reads:

"1. A compound selected from the group consisting of 3–phenyl–3–pyrrolidyl basic esters of the following formula:

wherein R is selected from the group consisting of hydrogen, lower alkyl, cycloalkyl, phen-lower-alkyl and phenoxy-lower-alkyl; wherein Acyl is a radical selected from the group consisting of acetyl, propionyl, phenoxyacetyl and phenoxypropionyl; and wherein X is selected from the group consisting of hydrogen, halogen, hydroxy, lower alkyl and lower alkoxy and n is a whole number less than 3; and nontoxic acid addition and quaternary ammonium salts thereof, in which quaternary ammonium salts the organic radical is selected from the group consisting of lower-alkyl and aralkyl containing a maximum of eight carbon atoms."

1. Appellant has defined "antitussives" as "inhibitors of the cough reflex."

2. Dorland, The American Illustrated Medical Dictionary 80 (22nd ed. 1951) defines *"analgesic"* as "A remedy for pain."

The references relied on are:

| | | |
|---|---|---|
| Schmidle et al. | 2,784,192 | Mar. 5, 1957 |
| Martin et al. | 2,987,517 | June 6, 1961 |
| Swedish Patent | 159,630 | July 16, 1957 |
| Bloxam (British) | 483,258 | Apr. 14, 1938 |
| Roche Products | 629,196 | Sept. 14, 1949 |
| Limited (British) | | |

Richter's Organic Chemistry, Vol. 3, pages 3 and 4 (1923)

---

The Schmidle et al. and British patent 629,196 disclose 4–piperidinol esters, the Schmidle et al. patent teaching that the esters are "unusually potent analgesics" while the esters in the British patent are said to possess "valuable spasmolytic [3] and analgesic properties."

The Martin et al. patent which is the counterpart of the Swedish patent as stipulated, discloses that certain esters of $\propto$–phenyl–$\propto$ –alkylacetic acid esters of 4–piperidinols and of 3–pyrrolidinols have spasmolytic and excellent analgesic properties. The British patent 483,258 discloses the equivalence of 4–piperidinols and 3–pyrrolidinols in anti-spasmodic esters of polyarylacetic acid. Richter's Organic Chemistry lists pyrrolidine and piperidine together under a "Homologous series" of rings.

Claims 1, 2, 5, 10, 11, 22 and 23 were rejected by the examiner as unpatentable over Schmidle et al. or British patent 629,196 in view of British patent 483,258, the Swedish patent and Richter's Organic Chemistry, it being his position that, since the primary references disclose the corresponding 4–piperidinol esters and the secondary references disclose the equivalence of 3–pyrrolidinols and 4–piperidinols in pharmaceutical compounds as well as the homology of pyrrolodine and piperidine, the claimed compounds would be obvious to one skilled in the art. He stated that since the corresponding piperidine compounds were disclosed by the prior art as analgesics and antispasmodics, it would follow that appellant's corresponding pyrrolidinol compounds "would be clearly suggested for testing to one of ordinary skill in the art as analgesics and antispasmodics."

The board, in affirming the examiner, stated:

"We have carefully considered the utility of appellant's compounds as compared with the prior art. These compounds are within the area shown by the prior art as having both analgesic and antispasmodic effects. To determine that compounds which are obvious in all other respects to one with ordinary skill in this art that would be expected to have properties as analgesics and antispasmodics, have one property to the exclusion of the other is not in itself so surprising as to make the compounds unobvious."

Appellant urges that he has provided new compounds which are nonanalgesics and antitussives. It is contended that antitussive and analgesic activities are separate activities between which there is no parallelism, that this is art-recognized as disclosed in appellant's specification and that neither the examiner nor the board "have taken exception to this point." Appellant argues that the prior art compounds most closely related to the claimed compounds by formula or structure have a different pharmacological activity, being highly active analgesics, and that they are in fact addictive. Appellant contends that although some of the closest prior art compounds are known to have antispasmodic activity, none of such compounds are taught to be

---

3. Dorland, The American Illustrated Medical Dictionary 1398 (22nd ed. 1951) defines *spasmolytic* as "Checking spasms;".

antitussives and that although antitussive activity could be considered an antispasmodic activity, if it is to be so considered, "it is a *very specific* type of antispasmodic activity." Appellant contends that he has presented affidavit evidence that his claimed antitussive compounds are devoid or substantially devoid of analgesic activity and that the affidavit was considered by the examiner to establish unobvious properties for the claimed compounds.

The issue facing this court is whether the subject matter sought to be patented is obvious under 35 U.S.C. 103.

At the time appellant made his invention, one skilled in this art knew that prodine, a substituted piperidine disclosed in the Schmidle et al. patent and the British patent 629,126, and that the substituted piperidine, meperidine, existed. The formulae of prodine and meperidine are reproduced below:

prodine

meperidine

The art of record taught that prodine is an antispasmodic as well as an analgesic. In an affidavit made of record, it was shown that meperidine exerted a significant analgesic effect and a literature reference was made to prodine wherein it was reported that prodine is even a more potent analgesic than meperidine.

Appellant's compound which is closest to the prior art has the formula:

In the above affidavit, on the basis of comparative tests with that compound of appellant and six other substituted pyrrolidines as against meperidine, it was reported that the substituted pyrrolidine compounds exhibited no appreciable analgesic activity.

We think appellant's showing supports and is in conformity with the statement in his specification that an object of his invention is "to provide a series of compounds having a relatively low order of analgesic activity." Moreover, the unobvious property inherent in the claimed compounds has not been denied by the Patent Office, the examiner having stated that "The affidavit * * * is considered to establish unobvious properties for the claimed compounds." As this court said in In re Papesch, 315 F.2d 381, 50 CCPA 1084, there is no basis in law for ignoring any property in making a comparison of the claimed and prior art compounds.

We think the record before us is sufficient to rebut the obviousness of the claimed compounds over the prior art.

For the reasons set forth above, the decision of the board is reversed.

Reversed.