54 CCPA

**Application of Halbert C. WHITE and Don V. Wysong.**

**Patent Appeal No. 7725.**

United States Court of Customs and Patent Appeals.

April 6, 1967.

Smith, J., dissented.

Neal A. Waldrop, Detroit, Mich., Theodore Post, Midland, Mich., for appellants.

Joseph Schimmel, Washington, D. C. (Jack E. Armore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH, ALMOND, Judges, and WILLIAM H. KIRKPATRICK.*

KIRKPATRICK, Judge.

This is an appeal from the decision of the Board of Appeals affirming the rejection of claims 1, 3 and 4 of appellants' application serial No. 133,804, filed August 25, 1961, for "Method of Preparing di-L-lysine.D-Camphorate." No claim has been allowed.

Claim 1 is the broadest of the appealed claims and it reads:

1. In a method of recovering di-L-lysine.D-camphorate from an aqueous medium in which it is formed by reaction between proportions of 0.35 to 0.65 mole of D-camphoric acid and 1 mole of DL-lysine, the improvement which consists in adjusting therein the proportion of water and of methanol to 80 to 160 ml. of water and 50 to 250 ml. of methanol per mole of DL-lysine reactant and adjusting the temperature of said aqueous medium to within the range 45° to 90° C. to precipitate therefrom high purity crystalline di-L-lysine.D-camphorate and recovering said crystalline d-L-lysine.D-camphorate directly therefrom.

Claims 3 and 4 depend from claim 1 and they more particularly define the preferred operating conditions for appellants' method. Both parties agree that all of the appealed claims stand or fall together. Therefore, it is only necessary to consider the merits of the appeal with respect to claim 1.

Lysine is one of the essential amino acids. When lysine is synthesized DL-lysine, which is a mixture of L-lysine and D-lysine, is obtained. The isomer L-

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

lysine is present in various proteins and it can be metabolized by humans whereas D-lysine cannot be utilized as an amino acid and it has no known nutritional value. Appellants' invention relates to the separation of L-lysine from a DL-lysine mixture by reacting the DL-lysine with D-camphoric acid in an aqueous methanol medium and then selectively crystallizing out the di-L-lysine D-camphorate from said medium at a temperature of 45° to 90° C.

The references relied upon are:

Berg, J. Biol. Chem. Vol. 115 (1936) pp. 9–14

| Emmick | 2,556,907 | June 12, 1951 |
| Rogers | 2,657,230 | Oct. 27, 1953 |

The Berg article discloses the resolution of DL-lysine by fractionally crystallizing its camphorates from 50% methyl alcohol at room temperature. Berg states that the L-lysine compound with D-camphoric acid is "the less soluble and hence the more readily purified." The lysine isomers are then isolated from the camphorates as the dihydrochlorides. Berg employs about 0.5 mole of D-camphoric acid per mole of DL-lysine.

The Emmick patent, cited by the examiner as background art, also relates to the optical resolution of lysine and it contains the following disclosure:

The most commonly used method of resolving dl-mixtures involves combination with an optically active compound known as the resolving agent, followed by fractional crystallization of the resulting mixture of compounds (diastereoisomers.) For a practical resolution, it is necessary to find a combination of resolving agent and solvent which will give good crystallization behavior, together with a pronounced difference in solubility between the diastereoisomers. Berg (J. Biol.Chem. 115, 9–15 (1936)) obtained 1(+)-lysine by combining dl-lysine with d-camphoric acid and crystallizing the product from 50% aqueous methanol.

For various reasons, Emmick found it advantageous "to provide a new resolving agent for lysine" and this is accomplished by the use of an optically active glutamic acid or its ammonium salt. Emmick's process is stated to be carried out at room temperature.

The Rogers reference, which discloses an improvement over the method of Emmick, indicates that Emmick's crystallization procedure should be carried out at a temperature in the range of 45 to 75° C., preferably about 60° C.:

The above patent [Emmick] discloses temperatures in the range 15–30° C. as the preferred and most advantageous temperatures for carrying out the fractional crystallization. It has now been discovered that highly advantageous and surprising results are realized when employing crystallization temperatures which are substantially higher than 30° C. Thus, the use of such higher temperatures permits a marked reduction in crystallization time, which is of considerable value in the economy of the process. Another outstanding advantage is that the resulting product has a markedly improved crystal structure which greatly facilitates its separation from the crystallization mixture.

The examiner rejected the appealed claims as unpatentable over Berg in view of Rogers. It was the examiner's contention that it would be obvious to a skilled chemist to apply the improved crystallization procedure of Rogers to the Berg method. The board agreed with the examiner and stated:

In our opinion, the art exemplified by Rogers would suggest that it would be beneficial to increase the crystal-

lization temperature; and to apply this expedient to the Berg resolution procedure would be obvious to the skilled artisan. We agree with the Examiner that the differences between appellants D-camphorate salt and Rogers' glutamate salt, urged by appellants, would be inherent characteristics depending on the resolving agent used, and irrelevant to the crystallization procedure. And since, in our view, the art does suggest the use of higher crystallization temperatures, the selective or differential solubility of the L-lysine D-camphorate as against the D-lysine D-camphorate, would be inherent.

It is noted that Berg discloses molar ratios (1:0.5) of the reactants (DL-lysine and D-camphoric acid) as well as the methanol-water ratios (1:1), both ratios falling within the respective ranges specified in claim 1.

The complicating factor in the present case is that appellants, in their application, referred to a White patent [1] (one of the appellants herein). During prosecution before the examiner and before the board, appellants urged that the White patent should be considered as a part of the prior art and, when so considered, it shows the unobvious nature of appellants' present invention. Before us, appellants point to the fact that when White filed his application, the Berg and Rogers disclosures were available to him but White, obviously a man skilled in this art, did not apply the teachings of Rogers to the method of Berg. White modified the Berg process by decreasing the amount of D-camphoric acid used per mole of DL-lysine. It is the appellants' contention that the above facts show that "one skilled in the art would not look to the reaction conditions for resolving DL-lysine with glutamic acid to ascertain how to best resolve DL-lysine when using

D-camphoric acid." The board apparently refused to give any consideration to the White patent and stated:

It is noted that appellants both in their main brief and in their reply brief as well as in the specification discuss, at length, the White patent, and in the reply brief request that the Board consider this patent. We must point out, however, that since the Examiner has not relied on this reference it is not before us for consideration. We are bound to consider the appeal as being based only on the record before us and limited to those references which were forwarded to us and relied on by the Examiner.

However, the solicitor contends that the board construed appellants' request as "one to involve the White patent as the more appropriate basis for rejection" because it is the closest prior art, and it was this request which the board denied. The solicitor's brief then states:

However, in contending for the patentability of the appealed claims below, the appellants had argued the "state of the art" with references to the White patent. Although there are no express comments on those arguments in the decisions of the lower tribunals, it must be presumed that they were considered and found unpersuasive.

In view of the above, we agree with the appellants that the disclosure of White is before us as part of the prior art to be considered in determining the issue of obviousness.

Appellants contend that there is no legal basis for combining the Berg and Rogers teachings since the problem faced by Rogers and that faced by the appellants were entirely different:

Since Emmick's L-lysine L-glutamate product was about 95% optically pure and produced in satisfactory

---

1. U. S. Patent 2,859,244 issued November 4, 1958, for "Resolution of DL-lysine with D-Camphoric Acid." White appears to be an improvement over the Berg method and it calls for the use of 0.2 to 0.35 mole of D-camphoric acid per mole of DL-lysine. White also discloses that the precipitation of di-L-lysine D-camphorate is preferably carried out in a medium of between 60 to 95 parts of alcohol and 40 to 5 parts of water.

yields, the *only* problem facing Rogers in modifying Emmick's process was that of reducing the time required for the reaction. Emmick used 40–48 hours. Rogers raised the temperature and reduced the reaction time to a minimum of 8 hours.

\* \* \* Restated in its entirety, the problem faced by appellants was that of elimination of the White patent recrystallization step, while preserving a high yield of high optical purity product in a reasonably short total reaction time.

Appellants also contend that a consideration of all of the prior art, including the White patent, would lead one away from the appellants' claimed process.

After a thorough review of the case, we are of the opinion that the decision below must be affirmed.

The resolution of DL-lysine by the use of D-camphoric acid is old in the art, as shown by Berg. The only substantial difference between appellants' claimed process and that of Berg resides in the crystallization temperatures employed. Emmick discloses that the Berg method for resolving DL-lysine requires improvement since the D-camphoric acid resolving agent is expensive, of uncertain availability in this country, and results in rather wide variations in yield and purity of product. Emmick provides a new resolving agent, an optically active glutamic acid, but otherwise substantially follows the procedure of Berg. The Rogers patent discloses an improvement over Emmick by the use of a crystallization temperature of 40 to 75° C. When such relatively high temperatures are used, Rogers reports that "highly advantageous and surprising results are realized." The advantageous results referred to by Rogers are the shortened crystallization time and very marked improvement in crystal structure of the product which are then easily filtered and recovered substantially free of agglomerates.

The stated rejection is that the claimed process is obvious in view of the Berg and Rogers references. Berg states that his crystallization step was continued over night in the cold. In view of Rogers' teaching that shorter crystallization time can be realized by the use of higher temperatures, it seems to us that it would be obvious to one skilled in the art to employ the higher temperatures of Rogers in the method of Berg. The fact that Berg does not disclose appellants' ranges of proportions of various materials is of little significance since Berg's proportions fall within the ranges claimed by appellants.

Appellants' argument to the effect that the claimed process is unobvious in view of the prior art, including the White patent, is not persuasive. Though appellants stated that they were concerned with the elimination of the recrystallization step of the White process, it is clear that White does not *require* any such recrystallization step. Thus White states:

It has previously been believed that 0.5 mole of D-camphoric acid per mole of DL-lysine was necessary to effect a separation of the L- from the D-isomer as the di-L-lysine.D-camphorate, and that a plurality of fractional crystallizations was necessary to get a good isomer separation. *By the process of this invention*, utilizing a proportion of 0.2 to 0.35 mole of D-camphoric acid per mole of DL-lysine, *crystallization of di-L-lysine.D-camphorate is carried out with ease and rapidity to give a very granular salt. One fractional crystallization suffices*, yet the yields of L-lysine approximate 80 percent, DL-lysine basis. [Emphasis added.]

However, White does employ a recrystallization step to increase the purity of his product from 78% to 98% L-lysine. What appellants are apparently saying may be that they are able to produce a purer product initially by their claimed method. This line of argument misses the mark since the rejection is not based on White but on Berg. Moreover, the in-

## 1014

creased purity of the initial product is only one of the factors to be considered in determining the issue of obviousness of the claimed process. In re Graf, 343 F.2d 774, 52 CCPA 1206. When appellants' process is considered in view of all of the art of record, we are not persuaded that the board committed reversible error.

The decision below is affirmed.

Affirmed.

SMITH, Judge (dissenting).

My disagreement with the majority is twofold: (1) The majority opinion does not give effect to the test for determining obviousness under 35 U.S.C. § 103 as recently stated by the United States Supreme Court in Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed. 2d 545:

> * * * Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. * * *

If this test is applied to the present record, the numerous differences between the prior art and the claims at issue would lead to the conclusion that the claims are directed to an unobvious invention.

(2) It is only by a hindsight reconstruction of the prior art in the light of appellants' disclosure that the majority can so combine the several references as to support a rejection under section 103. The mandate of section 103 is that the determination of obviousness must be made as of the time appellants made their invention. The prior art *as reconstructed* by the majority *did not exist* at such time. It was only by reason of appellants' invention that such reconstruction is now made. The art prior to appellants' filing date does not suggest this reconstruction.

I would, therefore, reverse the decision of the board.