## Application of Timothy F. DONOVAN and William P. Ryan.

### Patent Appeal No. 74–542.

United States Court of Customs and Patent Appeals.

Jan. 16, 1975.

Harold James, New York City, James & Franklin, New York City, attorney of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, John W. DeWhirst, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Associate Judges.

ALMOND, Senior Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 1–4, 7, 15, 16, 35–44, 46 and 47 under 35 U.S.C. § 103 of appellants' application [1] entitled "Solenoid Operated Printer." We reverse.

### The Invention

The invention relates to a high speed printer employing solenoid systems to move a type body which contains the characters to be printed. Figures 1 and 11, reproduced below, respectively, illustrate appellants' cable-pulley solenoid system and a differential lever solenoid system:

FIG.1

FIG.11.

A type body or cylinder 176 is in the form of a prismatic cylinder that is typically of octagonal cross-section with rows of characters on the faces. A rotatable splined shaft 174 supports the cylinder for axial movement thereon. The shaft is rotatable through gear 194. Rotational movement of the shaft and axial movement of the cylinder to a selected character on the cylinder is provided by separate solenoid systems each comprising a plurality of pairs of solenoids (Fig.

---

1. Serial No. 852,168 filed August 22, 1969.

1–116, 118; 120, 122; 124, 126 and Fig. 11–228, 230; 234, 236; 238, 240) with a cable-pulley connection (Fig. 1) or a lever connection (Fig. 11), respectively, to effect axial movement of the cylinder and rotation of the shaft. Printing is effected by a hammer head 182 on hammer 180 that strikes an inked ribbon (not shown) or the like against a paper (not shown) interposed between the hammer head and selected character on the cylinder. A step-by-step lateral advancement of the type body as well as the hammer (i. e. spacing) may be superimposed on the character selection motion through feed drum 152 by a ratchet escapement mechanism when printing lines on a page.

The plurality of pairs of solenoids that operate the cable-pulley and the lever connection systems function basically the same so that reference may be confined substantially to the cable-pulley system of Figure 1. Solenoid 116 forms a first pair with solenoid 118 through connecting member 160 attached to their movable cores with pulleys 128, 130 on the member. Solenoid 120 forms a second pair with solenoid 122 through connecting member 164 with pulleys 136, 138 (superimposed) on the member. Solenoid 124 forms a third pair with solenoid 126 through connecting member 156 with pulleys 132, 134 on the member. Belt or cable section 150 is secured at one end 170 to yoke 166, looped around pulleys 148, 142, 134, 136 and 130, and secured at its other end to feed drum 152. The other belt or cable section 151 is similarly secured at one end 169 to yoke 166, looped around pulleys 146, 144, 132, 138 and 128 and secured at its other end to feed drum 152. The reciprocating movement of each of the pairs of pulleys to its two possible positions is obtained by energization of one solenoid of each pair to determine the position of its core and results in a change in the relative position of the type cylinder. The three pairs of solenoids have different core stroke lengths which typically may be 1/16 inch, 1/8 inch, and 1/4 inch, respectively. The change of the effective belt length is double the linear change in pulley po-

sition so that the spacing of characters on each row on the type cylinder might be 1/8 inch. The various combinations of the two operative positions of each solenoid pair gives eight possible character selections for each row on the type cylinder. Appellants' brief states that the character selection signals that control the solenoid pairs may be in the form of a simple binary code which, in this case, would be a three digit code. Thus, each axial position would be represented by a particular three digit binary number. The three pairs of solenoids with the lever connection system shown in Figure 11 operate in a similar manner. With pivot point 235 fixed to the printer frame, combinations of the two positions of each pair of solenoids provides eight positions for the gear rack 250. The gear rack drives the gear 194, which is mounted on the type cylinder shaft (Fig. 1), to the selected one of eight rows of characters on the type cylinder.

The closed loop cable-pulley connection and the lever connection, along with the solenoid pairs, permit movement of the type cylinder directly from one character to the next without the necessity of returning to a "home" position after each printing action. The significance of returning the type cylinder to a "home" position will be more apparent from reading the description of the principal reference, Howard, under our following discussion of "The Prior Art."

The examiner and the board placed the claims into Groups I, II, and III according to the prior art rejections. Claims 1, 3, and 35 (dependent on claim 2) are, respectively, representative of the groups:

1. In a printer having a movable type body, a solenoid system to move the type body, said solenoid system comprising a plurality of pairs of opposing solenoids, a plurality of displacement means each operatively connected to a pair of solenoids, said displacement means being movable in a first direction, by one of said solenoids of a pair, to a first position and movable in a second direction, by the other solenoid of said pair, to a second posi-

tion, said plurality of displacement means having different displacements which are interrelated in a predetermined ratio, means to sum the displacements of said displacement means, and means to transmit the sum of said displacements to the type body for selection of a position on the type body.

2. The printer of claim 1, wherein the means to sum the displacements of said solenoids comprises a plurality of pulleys operatively connected to said displacement means and movable therewith and cable means trained around said pulleys and operatively connected to said type body.

3. The printer of claim 1, wherein the means to sum the displacements of said displacement means comprises a differential lever system comprising a plurality of levers operatively connected together, each displacement means being operatively connected to a lever.

35. The system of claim 2, wherein said pulleys are arranged in pairs, each pair being operatively connected to one of said displacement means and movable therewith, and wherein said cable means comprises a first cable operatively connected at one end to said type body and trained successively around one pulley of each pair and second cable operatively connected at one end to said type body and trained successively around the other pulley of each pair.

### The Prior Art

The references relied upon were:

| | | |
|---|---|---|
| Howard | 2,727,944 | December 20, 1955 |
| Bretti | 3,256,969 | June 21, 1966 |
| Hickerson | 2,757,775 | August 7, 1956 |
| Pfannenstiehl | 1,548,168 | August 4, 1925 |

Howard, which appellants acknowledge is the basic printer upon which their invention is an improvement, discloses a printer with two cable-pulley solenoid systems that provide rotational and axial movement of a type cylinder.

Figure 2, reproduced below, illustrates the system for axial movement:

The type cylinder 84 is positioned for axial character selection movement by single solenoids 136, 140, 144 which move pulleys 118, 120, 122, respectively, to

vary the effective length of cable 124. The solenoid cores 134, 138, 142 are normally biased to their extended positions by tension on cable 124 and may be moved to their retracted positions by energization of their motivating solenoids. The three pairs of solenoids might typically have core stroke lengths of 1/16 inch, 1/8 inch, and 1/4 inch. One end of the cable 124 is anchored to fixed point 126 and goes around pulleys 122, 120, 118, and 128 with the other end anchored to fixed point 130. Pulley 128, as well as pulley 98, is mounted on movable frame 132, which frame is moved laterally by the solenoids. A second cable 92, which is attached to one side of the type cylinder, goes around pulleys 94, 96, 98, and 100, and the other end thereof is attached to the rachet-type character spacing drum or escapement 102. Return cable 86 is connected at one end to the other side of the type cylinder. It goes around guide pulley 88 and is attached to spring loaded wheel 90 to pull the type cylinder to the left. This pulling force maintains cables 86, 92, and 124

taut and the solenoid cores extended. The system for rotational movement of the type cylinder operates in a similar manner. In operation, the solenoids are selectively actuated to position the desired type character for printing. Because the spring loaded wheel, acting through the cables, extends the three solenoids after each character selection and printing, the type cylinder returns to a "home" position after printing. For example, consider that a row of characters on the type cylinder are "ABCDEFGH" and "A" is the "home" position. To type "GH" the type cylinder would travel from "A" to "G," back to "A" and then to "H" and back to "A."

Bretti discloses a high speed printer, which like appellants' printer, provides movement of a type cylinder directly from one character to the next without return to a "home" position. Figs. 4 and 5, reproduced below, illustrate one of the two like mechanisms that provide axial and rotational movement of a type cylinder:

Fig. 4

Fig. 5

The mechanism comprises a differential lever system comprising a plurality of levers 12, 13, and 14 operatively connected together by pivot links 16. The

left most link 16 is pivotally mounted to fixed point 18 and to lever 14. Rack 99 is pivotally connected to lever 12 and is slidably mounted to impart movement to gear 98 which provides movement to the type cylinder. Levers 12, 13, and 14 are provided with pivots 19 for vertical sliding movement within guide slots 21 in fixed guide plate 22. The vertical positions of pivots 19 determine the vertical position of pivot point 17 and, thus, of the rack 99. Movement of the pivots to an up or down position is provided by the camming slots 23 in camming levers 24 that selectively rock to left and right positions. Each of the three camming levers 24 is pivoted on its respective hub 19 and, as shown in Fig. 5, comprises a pair of arms 26 and 27 connected by a crossbar 28. A rod 34, slidably mounted in each hub, forms the common core for each pair of solenoids 35, 36. The pairs of solenoids are controlled in accordance with a three digit binary code. A lever 38 is mounted on pivot 41 secured to each crossbar 28. The upper end of

lever 38 engages rod 34 and the lower end engages a pin 42. The rocking of lever 38 by one of the solenoid pairs causes pin 42 to alternately engage the slot 47 in slide 43 or slot 48 in slide 44. Sliding actuators 43 and 44 are reciprocated in opposite directions by crank 57 through linkage 52, 49, 51. Each time a print operation is effected, the crank 57 rotates counterclockwise 360°. Slots 47 and 48 are mutually facing and their lengths correspond to the distance between the left and right positions of rocking levers 24. Thus, depending on which sliding actuator is engaged by pins 42, camming levers 24 are rocked to the left or right to vertically move pins 19 during the forward stroke of the actuators. The return stroke of the actuators is ineffective to rock the camming levers.

Pfannenstiehl is relied on for its disclosure of a differential lever system to rotate a type body in a printer. Figure 1, reproduced below, is illustrative:

Fig. 1

Discs 13-18 are selectively rotated 180° by a gear drive and trip clutches to move lever 12 and, hence, rack 25 which rotates gear 26 on type wheel 29. The mechanism for rotating the discs has no relation to appellants' invention.

Hickerson is relied on for its disclosure in a typewriter of pulley-pairs along with first and second cable sections for moving a type cylinder. Figure 6, reproduced below, is illustrative of the mechanism for imparting axial movement to a type body:

FIG. 6

It discloses pairs of pulleys 21, 28, and 22, 27, which pairs are mounted on movable permutation bars 29 and 30, respectively (each contiguous bar is shown in broken sections for clarity). One section of tape or cable 12 is attached to type cylinder 4 through bracket 9 and trained around stationary pulleys 17, 18, and 19, movable pulleys 28 and 27, stationary pulley 26, and anchored to ratchet-type spacing drum or escapement 78. A second section of tape 12, also anchored to the escapement, is trained around stationary pulley 23, movable pulleys 29 and 21, stationary pulleys 15, 14 and 13, and is also attached to bracket 9. Movement of the pulley pairs through movement of permutation bars 29 and 30 effects changes in the position of the tape terminal ends 16 and 12 to shift the axial position of the type cylinder. The permutation bars are spring biased to a "home" position by springs 58 which results in a "home" position for the type cylinder. Notches 31 provide cam surfaces 32 which function in combination with vertically moving key bar 33 (only one of many is shown) to displace the permutation bars laterally of the typewriter. When the lower edge 34 of a key bar strikes a permutation bar cam surface (some key bars align with notches that have no cam surfaces, which results in no movement of that permutation bar), the permutation bar moves to the right or left depending on the slope

of the cam surface. The type cylinder has six characters per row, so the cam surface on one permutation bar must axially move the type cylinder two spaces while the cam surface on the other bar moves it one space. Depressing the key bar to the bottom 35 of notch 31 actuates the print hammer. Rotational movement of the type cylinder is achieved in a similar manner as the axial movement.

### The Rejections

The examiner rejected the claims in Group I (claims 1, 2, 4, 7, 37, 40, 42, and 46[2]) on Howard in view of Bretti for obviousness under 35 U.S.C. § 103.

The examiner's reasoning was that Howard teaches the claimed structure except that only a single solenoid is used. He considered that Bretti teaches that returning a type cylinder to a "home" position between successive actuations can cause undesired rebounds, that these undesired rebounds can be eliminated by providing selecting members with a pair of common actuators to positively reciprocate the selecting members in opposite directions, and that pairs of solenoids can be provided to positively shift an element of the selection structure in opposite directions. Accordingly, he found it would have been obvious to provide a pair of opposing solenoids for each displacement means of Howard as recited by the claims.

The claims of Group II (claims 3, 36, 39, 43 and 44) were rejected over Howard in view of Bretti as applied to Group I and further in view of Pfannenstiehl. The examiner found it would have been obvious to substitute a differential lever system as claimed for the cable-pulley system of Howard.

The claims of Group III were rejected (claims 35, 15, 16, 38, 41 and 47) on Howard in view of Bretti as applied in Group I and further in view of Hickerson. The examiner relied on Hickerson for the features of pulley-pairs connected to displacement means and of first and second cables. The examiner found that it would have been obvious to provide the combination of Howard and Bretti with those features from Hickerson.

The board adopted the examiner's rejections along with the reasons given in support of them.

Appellants' arguments before the board, as well as here, stress that Bretti does not suggest substituting a pair of opposing solenoids for each solenoid of Howard. A basis for those arguments is the contention that Bretti's solution to the problem of returning the type cylinder to a "home" position is far removed structurally and functionally from appellants' solution. Appellants urge that the Howard and Bretti systems are incompatible and that the only way they could be combined would be to substitute one system in toto for the other. Furthermore, appellants argue that in order to provide Howard with the claimed solenoid system, the pulleys and cables themselves would necessarily have to be completely redesigned to provide a design that is nowhere suggested in Bretti.

Regarding the Group II rejection including Pfannenstiehl, appellants argue that this reference teaches a lever system that is structurally and functionally different from their lever system and that Pfannenstiehl does not add anything to Bretti.

The criticism by appellant of the Group III rejection is that Hickerson does not utilize solenoids to move its type cylinder. Appellants argue that Hickerson requires springs to return its type cylinder to a "home" position and, thus, has the same problem as Howard.

**2.** The Commissioner's brief states:

It is noted that claims 40 and 46 are both dependent upon claim 39, which is included in the Group II. rejection below. Thus, it is apparent that claims 40 and 46 should likewise have been included in the Group II. rejection, rather than in the Group I. rejection.

## OPINION

Our review of the record convinces us that the prior art relied upon by the examiner and the board does not support a holding of obviousness under 35 U.S.C. § 103[3] and that appellants have met their burden of establishing error in the board's decision.

■■ It is not clear how the proposed combinations of the references can be made to meet the claimed structure and at the same time result in a practical, operative mechanism. Rather, any combination of the references to meet the claims would be impossible without the benefit of appellants' disclosure and, at least, difficult even with that disclosure. The inventions of Bretti and appellants are admittedly directed to concepts for solving the same problem-eliminating return of a type cylinder to a "home" position after each character selection. This broad concept does not serve as a basis for arbitrarily choosing elements from the references to attempt to fashion appellants' claimed invention. In re Imperato, 486 F.2d 585 (Cust. & Pat.App. 1973).

There is no reason to modify the system of Howard by merely using opposing pairs of solenoids for each of its solenoids. A spring loaded wheel acting through the cables returns each of Howard's solenoids, which provide axial movement, to their extended positions. This tensioning of the cables is required by Howard's system to provide an operative mechanism. Adding an opposing solenoid to extend each of Howard's solenoids would serve no useful purpose. The modification of Howard as proposed in the rejection of the claims in Group I would not change its operation whereby the type cylinder always returns to a "home" position. Accordingly, there is absolutely no basis for combining the teachings of Howard and Bretti as the rejection contemplated.

Furthermore, the solenoid pairs of Bretti are used in a distinctively different manner from that in which appellants or Howard use solenoids. The reciprocating levers of Bretti move in opposite directions to selectively rock the camming levers to displace the differential lever system. The solenoid pairs act to select which reciprocating lever each camming lever is connected to during each print cycle. In contrast, appellants' solenoid system uses solenoid pairs to move the displacement means in two directions. Instead of suggesting appellants' system, Bretti leads away from it by suggesting a completely different mechanism. That Bretti might incorporate elements which could be used in appellants' system does not render appellants' claims obvious when there is no suggestion of using these elements in substantially the same manner as appellants use them.

The additions of Pfannenstiehl and Hickerson to the rejections of the claims in Groups II and III do not affect the impropriety of combining Howard and Bretti. As far as the use of a lever system is concerned, we agree with appellants that Pfannenstiehl does not add anything to Bretti, which discloses a differential lever system quite similar to appellants. Adding a modified lever system from Pfannenstiehl or a modified cable pulley system from Hickerson would result in a totally new combination which bears no resemblance to Howard or Bretti. Certainly neither Pfannenstiehl nor Hickerson in any way suggests the combinations that the examiner has proposed to meet the claims.

Considering the prior art as a whole, we find no suggestion of the claimed combinations such as would render them obvious within the meaning of 35 U.S.C. § 103. Accordingly, the decision of the board is reversed.

Reversed.

---

3. The test is whether the invention would have been obvious to those skilled in the art in light of the knowledge made available by the reference.