In re Diane M. DILLON.

No. 88–1245.

United States Court of Appeals, Federal Circuit.

Dec. 29, 1989.

James H. Laughlin, Jr., Benoit, Smith & Laughlin, Arlington, Va., argued for appellant. With him on the brief was Gregory F. Wirzbicki, Unocal Corp., Brea, Cal., of counsel.

Fred E. McKelvey, Sol., Office of the Sol., Arlington, Va., argued for appellee. With him on the brief were Richard E. Schafer, Associate Sol. and Joseph F. Nakamura.

Before NEWMAN and ARCHER, Circuit Judges, and COWEN, Senior Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

Diane M. Dillon, assignor to Union Oil Company of California, appeals the decision of the Board of Patent Appeals and Interferences ("Board") of the United States Patent and Trademark Office ("PTO"), November 25, 1987, rejecting claims 2 through 14, 16 through 22, and 24 through 37, all

the remaining claims of patent application Serial No. 06/671,570 entitled "Hydrocarbon Fuel Composition". We reverse.

## The Invention

Dillon's patent application describes and claims her discovery that the inclusion of certain tetra-orthoester compounds in hydrocarbon fuel compositions will reduce the emission of solid particulates (*i.e.*, soot) during combustion of the fuel. In this appeal Dillon presents claims to hydrocarbon fuel compositions containing these tetra-orthoesters, and to the method of use of these compositions to reduce particulate emissions during combustion. Claim 2 is the broadest composition claim:

2. A composition comprising: a hydrocarbon fuel; and a sufficient amount of at least one orthoester so as to reduce the particulate emissions from the combustion of the hydrocarbon fuel, wherein the orthoester is of the formula:

$$
\begin{array}{c}
\text{O-R}_7 \\
| \\
\text{R}_8\text{-O} \longrightarrow \text{C} \longrightarrow \text{O-R}_6 \\
| \\
\text{O-R}_5
\end{array}
$$

wherein $R_5$, $R_6$, $R_7$ and $R_8$ are the same or different mono-valent organic radical comprising 1 to about 20 carbon atoms.

The broadest method claim is claim 24:

24. A method of reducing the particulate emissions from the combustion of a hydrocarbon fuel comprising combusting a mixture of the hydrocarbon fuel and a sufficient amount of at least one orthoester so as to reduce the particulate emissions, wherein the orthoester is of the formula:

$$
\begin{array}{c}
\text{O-R}_7 \\
| \\
\text{R}_8\text{-O} \longrightarrow \text{C} \longrightarrow \text{O-R}_6 \\
| \\
\text{O-R}_5
\end{array}
$$

wherein $R_5$, $R_6$, $R_7$ and $R_8$ are the same or different mono-valent organic radical comprising 1 to about 20 carbon atoms.

The other claims are narrower in scope and/or contain additional limitations. In view of our decision, the other claims need not be separately considered.

The tetra-orthoesters are a known class of chemical compounds. It is undisputed that their combination with hydrocarbon fuel, for any purpose, is not shown in the prior art, and that their use to reduce particulate emissions from combustion of hydrocarbon fuel is not shown or suggested in the prior art.

## The Rejection

The Board held all of the claims to be unpatentable on the ground of obviousness, 35 U.S.C. § 103, in view of certain primary and secondary references. As primary references the Board relied on two Sweeney United States Patents, Nos. 4,390,417 and 4,395,267. Sweeney '417 describes hydrocarbon fuel compositions containing specified chemical compounds, *i.e.*, ketals, acetals, and tri-orthoesters,[1] used for "dewatering" the fuels. Sweeney '267 describes three-component compositions of hydrocarbon fuels heavier than gasoline, immiscible alcohols, and tri-orthoesters, wherein the tri-orthoesters serve as co-solvents to prevent phase separation between fuel and alcohol. The Board explicitly found: "The Sweeney patents do not teach the use of the orthoesters recited in appellant's claims."

The Board cited Elliott et al. United States Patent No. 3,903,006 (and certain other patents, not here significant) as secondary references. Elliott describes tri-orthoesters and tetra-orthesters for use as water scavengers in hydraulic (non-hydrocarbon) fluids. The Board stated that the Elliott reference shows equivalence between tetra-orthoesters and tri-orthoesters, and that "it is clear from the combined teachings of these references that [Dillon's

---

1. Tri-orthoesters have three orthoester (–OR) groups bonded to a central carbon atom, and the fourth carbon bond is to hydrogen or a hydrocarbon radical (–R); they are represented as $C(R)(OR)_3$. Tetra-orthoesters have four –OR groups bonded to a central carbon atom, and are represented as $C(OR)_4$; see Dillon's claims, *supra*.

tetra-orthoesters] would operate to remove water from non-aqueous liquids by the same mechanism as the orthoesters of Sweeney".

The Board stated that there was a "reasonable expectation" that the tri- and tetra-orthoesters would have similar properties, based on "close structural and chemical similarity" and the fact that both the prior art and Dillon use these compounds as "fuel additives". The Board stated that since the tetra-orthoesters were known to serve as water scavengers in hydraulic fluids, "there is a reasonable expectation that the prior art compositions will have properties similar to the claim compositions"; that is, that the tri-orthoesters would be expected to reduce particulate emissions. Although no reference was cited as suggesting the use of any orthoester to reduce particulate emissions,[2] or to show a relationship between the property of water scavenging and the property of reducing particulate emissions from combustion, the Board concluded, and the Solicitor argues on appeal, that the claimed composition and method "would have been *prima facie* obvious from the combined teachings of the references." On this reasoning, the Board held that unless Dillon showed some unexpected advantage or superiority of her claimed tetra-orthoester fuel compositions as compared with tri-orthoester fuel compositions, Dillon's new compositions as well as their new use to reduce particulate emissions were unpatentable for obviousness.

The Board then analyzed Dillon's specification, wherein Dillon had disclosed that both tri- and tetra-orthoesters are effective in reducing particulate emissions from combustion of hydrocarbon fuels, and presented data to illustrate this property. The Board held that because these data do not show the unexpected particulate-reduction superiority of the tetra-orthoester compositions as compared with the tri-orthoester compositions, Dillon had not overcome the *prima facie* case of obviousness.

The Solicitor maintains that it is not of controlling weight, or even pertinent, that there is no prior art suggesting Dillon's use of reducing particulate emissions, for any compositions similar to those claimed by Dillon. The Solicitor maintains that the existence of the tri-orthoester compositions of Sweeney, which are taught to have an entirely unrelated property and use, suffice to make a *prima facie* case of obviousness as to Dillon's method as well as her composition claims.

### The Issue

The issue is the patentability in terms of 35 U.S.C. § 103 of claims to Dillon's new composition and claims to its new method of use, when the components of the new composition are deemed to be structurally similar to components of known compositions, but the new use discovered by Dillon for her new composition is neither taught nor suggested in the prior art. The threshold question is whether, under such circumstances, a *prima facie* case of unpatentability for obviousness is deemed made.[3]

### I

### The Composition Claims

The facts as to the prior art are not in dispute; only the conclusions drawn therefrom are at issue. Sweeney shows compositions of tri-orthoesters in hydrocarbon fuels for the purpose of scavenging water in the fuels; Elliott shows that both tri- and tetra-orthoesters have the property of scavenging water in hydraulic liquids. No reference shows compositions of tetra-orthoesters in hydrocarbon fuels for any purpose, and no reference shows any orthoester fuel composition having the property and utility of reducing particulate emissions from combustion of fuels.

---

**2.** Although it was not cited or relied on by the Board, the Solicitor cites Moy et al. U.S. Patent No. 3,817,720, for its showing as "smoke-suppressant" in fuels, the combination of a hydroquinone ether, isopropyl alcohol, and diacetone alcohol. The Solicitor cites Moy only to show that particulate emission was a problem known to the art, as Dillon had stated in her specification.

**3.** Dillon's position is that evidence of unexpected results was not required in this case. Thus the Board's decision was based on Dillon's specification and the prior art, *prima facie*.

The Board held that a *prima facie* case of obviousness was made despite the fact that Dillon's compositions were new, and despite the absence of any suggestion in the prior art that these compositions would have the property and use discovered by Dillon. In view of this retrenchment by the Board from the weight of precedent, we have undertaken to review the history of this jurisprudence.

### A

The variety of factual situations that have arisen, in the Court of Customs and Patent Appeals, the Court of Claims, and in the Federal Circuit, has produced a rich body of precedent, as the courts sought to identify unifying criteria and apply consistent reasoning to determinations of the question of obviousness of composition and compound claims. Procedural as well as substantive rules were established, to facilitate the uniform application of 35 U.S.C. § 103 despite great diversity in technological facts and in the relationship of the prior art to the inventions at issue.

Thus, as the first step in the examination process, the PTO determines whether a *prima facie* case of obviousness is deemed made, based on the specification, the prior art, and any other evidence before the examiner. If a *prima facie* case is made, the applicant may adduce evidence and present argument in rebuttal, following which the determination of obviousness is made on all the evidence. If a *prima facie* case is not made, no rebuttal is necessary. See the discussion in *In re Piasecki*, 745 F.2d 1468, 223 USPQ 785 (Fed.Cir. 1984); *In re Rinehart*, 531 F.2d 1048, 189 USPQ 143 (CCPA 1976); and cases cited therein.

As we will discuss, some early CCPA cases held that a *prima facie* case of obviousness could be made based solely on similarity of structure, independent of properties and use; but by the 1960's, and thereafter, the weight of CCPA and Federal Circuit authority is that the chemical structure and the properties or utility must all be considered in determining whether a *prima facie* case of obviousness has been made. The early status was explained in *In re Lunsford*, 357 F.2d 380, 382 n. 2, 148 USPQ 716, 718 n. 2 (CCPA 1966):

> Just how one finds the compounds "obvious" in the first instance, the examiner does not say, but apparently he envisions a comparison of structures *only*. That such an approach is not sanctioned by this court, although concededly the law was less well-defined in June 1961, the date of the Examiner's Answer, can be seen, e.g., in *In re Krazinski*, 347 F.2d 656, 146 USPQ 25 [(CCPA 1965)]; *In re Ruschig*, 343 F.2d 965, 145 USPQ 274 [(CCPA 1965)]; *In re Ward*, 329 F.2d 1021, 141 USPQ 227 [(CCPA 1964)]; *In re Lunsford*, 327 F.2d 526, 140 USPQ 425 [(CCPA 1964)]; *In re Riden, Jr.*, 318 F.2d 761, 138 USPQ 112 [(CCPA 1963)]; *In re Papesch*, 315 F.2d 381, 137 USPQ 43 [(CCPA 1963)]; *In re Petering*, 301 F.2d 676, 133 USPQ 275 [(CCPA 1962)]; *In re Lambooy*, 300 F.2d 950, 133 USPQ 270 [(CCPA 1962)]. [Emphasis in original.]

It behooves the PTO, in the first step of patent examination, to ascertain the similarities and differences in structure and properties or utility, and any other pertinent evidence before the examiner, to determine whether in any particular case a *prima facie* case of obviousness is made. *See Piasecki*, 745 F.2d at 1472, 223 USPQ at 788 (*prima facie* obviousness is but a legal inference drawn from uncontradicted evidence).

### B

In determining whether an invention would have been obvious under section 103, based either on the application as filed (*i.e.*, *prima facie*) or with additional evidence if such is adduced, the statute is applied in view of the record and the prior art. As illustrated in precedent, appropriate weight is given to considerations such as the closeness to the field of the invention of the arts from which the cited references are drawn, the motivation or suggestion in the prior art to combine the cited references, the problem confronting the inventor, the nature of the improvement as compared with

the prior art, and a variety of other criteria, all as may arise in any particular case. No single case may involve all these issues, but when present, they can not be ignored.

The Commissioner's position in this case is that it is immaterial, in determining whether a *prima facie* case of obviousness has been made as to Dillon's composition claims, that no reference shows any relationship between use as a dewatering agent and use to reduce soot formation during combustion. Thus the Commissioner would hold Dillon's invention unpatentable because Dillon did not prove that her tetra-orthoester fuel compositions were superior in soot-reduction to the tri-orthoesters, although there is no suggestion in the prior art that either compound would have any soot-reducing properties at all. That idea comes solely from Dillon's specification, wherein she disclosed that both tri- and tetra-orthoesters are useful to reduce soot-formation from combustion of hydrocarbon fuels.

There is extensive precedent on these points. We review this precedent in light of the Board's decision and the Commissioner's arguments.

■ In determining whether a *prima facie* case of obviousness is made by the teachings of the prior art, the weight of precedent of the Federal Circuit and our predecessor courts requires that consideration be given to the properties and utility, as well as the structure, of a claimed new chemical compound or composition.[4] This precedent simply implements the requirement of section 103 that the invention be viewed as a whole, and of section 101 that the invention be "new and useful".

This requirement has been consistently upheld in the precedent of this court. For example, in *Lunsford* the examiner had taken the position that:

The argument that the 'subject matter as a whole' under 35 U.S.C. § 103 includes

the compound and its utility is considered to be without merit.

357 F.2d at 391, 148 USPQ at 725. The CCPA responded:

[I]t is reasonably clear that the examiner considered only the difference in *structures* between the claimed compounds and the prior art compounds.

Appellant was entitled to have differences between the claimed invention, *the subject matter as a whole,* and the prior art references of record evaluated. [Emphases in original.]

*Id.* (*citing In re Papesch,* 315 F.2d 381, 137 USPQ 43 (CCPA 1963)). *See also Lindemann Maschinenfabrik GmbH v. American Hoist and Derrick Co.,* 730 F.2d 1452, 1462, 221 USPQ 481, 488 (Fed.Cir.1984) (it is error to focus inquiry " 'solely on the product created, rather than on the obviousness or nonobviousness of its creation' ") (quoting *General Motors Corp. v. United States Int'l Trade Comm'n,* 687 F.2d 476, 482–83, 215 USPQ 484, 489 (CCPA 1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983)).

The Board required Dillon to show not only that her discovered utility was unobvious in light of what was taught or suggested in the prior art, but also that her new tetra-orthoester compositions possessed differences or advantages that were not possessed by the prior art compositions, irrespective of whether the prior art itself would lead one to expect that the prior art compositions would have the properties and use discovered by Dillon. That is, the Board required Dillon to show, by comparative experimental data, that the tri-orthoester fuel compositions did not have the property of reducing particulates in combustion—although the prior art itself is silent as to this property or any suggestion thereof, for either tri- or tetra-orthoester compositions.

---

4. Although Dillon's invention is a new composition, the Board as well as the Solicitor have cited cases dealing with new compounds and new compositions, and also new mechanical devices. For completeness we will discuss these classes of subject matter, although the cases are not entirely interchangeable: for example, few machines have no statutory utility or are directed to the solution of no problem, in contrast to chemical compounds which may be of solely scientific interest.

Review of precedent shows that while specific factual situations may have justified requiring this type of showing, as discussed *infra*, in general the CCPA and the Federal Circuit have declined to establish such a requirement as a general basis for patentability of new compounds and compositions. The weight of precedent is to the effect that when the claimed subject matter is a new chemical compound or composition, a *prima facie* case of obviousness is not deemed made unless both (1) the new compound or composition is structurally similar to the reference compound or composition and (2) there is some suggestion or expectation in the prior art that the new compound or composition will have the same or a similar utility as that discovered by the applicant. *In re Grabiak*, 769 F.2d 729, 731, 226 USPQ 870, 871 (Fed.Cir.1985):

> When chemical compounds have "very close" structural similarities and similar utilities, without more a *prima facie* case may be made.

*In re Rosselet*, 347 F.2d 847, 850, 146 USPQ 183, 185 (CCPA 1965):

> [W]e think appellants have failed to present adequate evidence to overcome a prima facie showing of obviousness by reason of the admitted "gross structural similarities" of the art compounds, coupled with the fact that those compounds are shown to have utility *in the same area of pharmacological activity.* [Emphasis in original.]

The question of whether a *prima facie* case of obviousness has been made by the prior art turns on the specific technological similarities and differences, as to both structure and properties or utility, between the claimed compounds or compositions and those taught in the prior art. *See, e.g., In re Chupp*, 816 F.2d 643, 646, 2 USPQ2d 1437, 1439 (Fed.Cir.1987) (new compound useful as herbicide was *prima facie* obvious from structurally similar prior art compounds useful as herbicides); *Grabiak*, 769 F.2d at 731–32, 226 USPQ at 871–72 (although similar utility was disclosed for prior art compounds and claimed compounds, structural similarity was insufficient to make *prima facie* case); *In re Payne*, 606 F.2d 303, 314, 203 USPQ 245, 254–55 (CCPA 1979) (new compounds useful as pesticides were *prima facie* obvious from structurally similar prior art compounds known as pesticides).

This precedent has evolved on analysis of a diversity of factual situations. One way that the courts have explained their reasoning is by pointing out that there must be a suggestion in the prior art that would have led a person of ordinary skill to the same solution of the problem facing the applicant: the prior art must provide a motivation whereby one of ordinary skill would be led to do that which the applicant has done. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1535, 218 USPQ 871, 876 (Fed. Cir.1983):

> The scope of the prior art has been defined as that "reasonably pertinent to the particular problem with which the inventor was involved."

(quoting *In re Wood*, 599 F.2d 1032, 1036, 202 USPQ 171, 174 (CCPA 1979)). *Payne*, 606 F.2d at 314, 203 USPQ at 255:

> When prior art compounds essentially "bracketing" the claimed compounds in structural similarity are all known as pesticides, one of ordinary skill in the art would clearly be motivated to make those same compounds in searching for new pesticides.

*In re Swan Wood*, 582 F.2d 638, 641, 199 USPQ 137, 139 (CCPA 1978):

> In view of the close structural similarity [and disclosed] antimicrobial activity, we believe that one skilled in the art would have been, *prima facie*, motivated to make the claimed compounds in the expectation that they, too, would possess antimicrobial activity.

These are simply other ways of explaining that the decision-maker must consider the problem confronting the applicant in order to ascertain how a person of ordinary skill would view the problem and its solution. *In re Gyurik*, 596 F.2d 1012, 1018, 201 USPQ 552, 557 (CCPA 1979):

> An element in determining obviousness of a new chemical compound is the motivation of one having ordinary skill in the art to make it. That motivation is not

abstract, but practical, and is always related to the properties or uses one skilled in the art would expect the compound to have, if made.

*In re Cable*, 347 F.2d 872, 874, 146 USPQ 175, 177 (CCPA 1965):

> Patentability of appellant's invention under 35 U.S.C. § 103 must be evaluated against the background of the highly developed and specific art to which it relates and this background includes an understanding of those unsolved problems persisting in the art which appellant asserts have been solved by his invention. *See Eibel Process Co. v. Minnesota & Ontario Paper Co.*, 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523 (1923).

Although the Solicitor appears unenthusiastic about this criterion,[5] it is well established, and has been expressed in various ways. *E.g., In re Deminski*, 796 F.2d 436, 443, 230 USPQ 313, 316 (Fed.Cir.1986):

> [The prior art] does not address Deminski's problem of how to remove a large and heavy assembly *as a unit....* There was no suggestion in the prior art to provide Deminski with the motivation to design the valve assembly [for this reason]. [Emphasis in original.]

*Fromson v. Advance Offset Plate, Inc.*, 755 F.2d 1549, 1556, 225 USPQ 26, 31 (Fed. Cir.1985):

> The critical inquiry is whether "there is something in the prior art as a whole *to suggest* the desirability, and thus the obviousness, of making the combination." [Emphasis in original.]

(quoting *Lindemann Maschinenfabrik GmbH*, 730 F.2d at 1462, 221 USPQ at 488); *In re Lalu*, 747 F.2d 703, 707, 223 USPQ 1257, 1260 (Fed.Cir.1984) (obviousness analysis requires inquiry as to whether the known uses of the prior art compounds as intermediates provide adequate motivation to one of ordinary skill to investigate these compounds "with an expectation of arriving at" appellants' compounds for the uses described by appellants); *In re Fine*, 837

F.2d 1071, 1075–76, 5 USPQ2d 1596, 1600 (Fed.Cir.1988) (although the applicant's temperature range overlaps the range shown in a reference, the applicant's purpose in using the claimed temperature range was not taught or appreciated in the prior art); *In re Geiger*, 815 F.2d 686, 688, 2 USPQ2d 1276, 1278 (Fed.Cir.1987) (although the prior art disclosed the components of the claimed composition for different uses, *prima facie* case not established "absent some teaching, suggestion or incentive supporting the combination"); *In re Donovan*, 509 F.2d 554, 562, 184 USPQ 414, 421 (CCPA 1975):

> That [the prior art] might incorporate elements which could be used in appellants' system does not render appellants' claims obvious when there is no suggestion of using these elements in substantially the same manner as appellants use them.

*In re Ratti*, 270 F.2d 810, 813, 123 USPQ 349, 352 (CCPA 1959) (the prior art did not teach "how to solve the problems" faced by the inventor); *In re Hortman*, 264 F.2d 911, 913, 121 USPQ 218, 219 (CCPA 1959):

> For, though the structure may be a simple expedient when the novel concept is realized, that structure may not be obvious to the skilled worker in the art where the prior art has failed to suggest the problem or conceive of the idea for its elimination.

These are not abstract criteria. They have often been applied to determinations of the question of unobviousness in the common situation illustrated herein, where Dillon's claimed subject matter is a new composition based on a chemical compound that is different from, but similar in structure to, a known compound, but the invention is based on a property or use not known or obvious from the prior art. Consideration of the problem facing the inventor is an element of perceptive analysis of whether the invention as a whole would have been obvious to a person of ordinary

---

5. The Solicitor asked the court to review its holding in *In re Wright*, 848 F.2d 1216, 6 USPQ2d 1959 (Fed.Cir.1988), wherein the court stated that it is appropriate to consider the problem facing the inventor, in adjudging whether a novel structure would have been obvious in terms of 35 U.S.C. § 103. *Wright* is discussed *post*.

skill. It is not a new parameter in obviousness determinations.

 The problem facing the inventor is directly related to the utility of the invention. Particularly in cases where the structures are closely related, the obviousness analysis is aided by consideration of the problem facing the inventor and the improvement he is seeking. See, for example, *In re Benno*, 768 F.2d 1340, 1346, 226 USPQ 683, 687 (Fed.Cir.1985), wherein this court observed that "[n]o reason is suggested why anyone would be led to 'modify'" the prior art in the way done by the inventor to solve his problem. The court stated:

> Neither reference has a word to say about the instability ... under ... tension ... [the problem faced by the inventor]. This is not a situation calling for comparative tests, or a showing of "unexpected results," to which the Solicitor has referred. There is no *prima facie* obviousness to be overcome and hence no need for that type of evidence.

*Id.* at 1347, 226 USPQ at 688. *See also, e.g., Ryco, Inc. v. Ag–Bag Corp.*, 857 F.2d 1418, 1424, 8 USPQ2d 1323, 1328 (Fed.Cir. 1988):

> Beater Bars as such were certainly old in the agricultural art, having been used on agricultural machines such as manure spreaders and balers.... Ryco has shown nothing in the prior art, however, which would suggest the use of the beater bar as a feeder in a bagging machine as in claim 15.

*Diversitech Corp. v. Century Steps, Inc.*, 850 F.2d 675, 679, 7 USPQ2d 1315, 1318 (Fed.Cir.1988):

> The problem confronted by the inventor must be considered in determining whether it would have been obvious to combine references in order to solve that problem.

*Lindemann Maschinenfabrik GmbH*, 730 F.2d at 1462, 221 USPQ at 488:

> Nothing in the references alone or together suggests the claimed invention as a solution to the problem of crushing rigidly massive scrap.

*Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1572, 220 USPQ 584, 588 (Fed.Cir.1984):

> Appellant does not dispute that a basis for determining whether art is analogous under the standards of the Court of Customs and Patent Appeals is to look at whether it deals with a problem similar to that being addressed by the inventor.

*Orthopedic Equipment Co. v. United States*, 702 F.2d 1005, 1009, 217 USPQ 193, 196 (Fed.Cir.1983) (five judge panel):

> In determining the relevant art of the claims in suit one looks to the nature of the problem confronting the inventor.

*Weather Engineering Corp. of America v. United States*, 614 F.2d 281, 287, 222 Ct.Cl. 322, 334, 204 USPQ 41, 46–47 (1980):

> The near unanimous approach by the courts is that "[t]he prior art that is relevant in evaluating a claim of obviousness is defined by the nature of the problem confronting the would-be-inventor."

(quoting *Louis A. Grant, Inc. v. Keibler Indus., Inc.*, 541 F.2d 284, 191 USPQ 424, 426 (7th Cir.1976)); *In re Rinehart*, 531 F.2d at 1054, 189 USPQ at 149 (the problem facing the inventor was not alluded to in the references, nor was there any suggestion to combine features of each reference); *In re Sponnoble*, 405 F.2d 578, 585, 160 USPQ 237, 243 (CCPA 1969) ("discovery of the source of a problem" is part of the "subject matter as a whole" to be considered in determining obviousness); *In re Pye*, 355 F.2d 641, 645, 148 USPQ 426, 429 (CCPA 1966):

> Neither reference is directed to the problem solved by the appellant's invention, namely, developing a cleaning composition for the skin having improved lubricity characteristics. In our view, only appellant's specification suggests any reason for combining the teachings of the prior art but use of such suggestion is, of course, improper under the mandate of 35 U.S.C. 103.

*In re Cable*, 347 F.2d 872, 879, 146 USPQ 175, 181 (CCPA 1965):

> We have been unable to find in any reference of record a recognition of the fracture and cracking problem solved by ap-

plicant, or a solution therefor, or a suggestion of the many additional new results flowing from the appellant's invention.

*In re Shaffer*, 229 F.2d 476, 480, 108 USPQ 326, 329 (CCPA 1956) (references which never recognized applicant's problem would not have suggested its solution). *Shaffer* was discussed in *In re Martin*, 372 F.2d 556, 152 USPQ 610 (CCPA 1967), decided the same day as *In re Gershon*, 372 F.2d 535, 152 USPQ 602 (CCPA 1967), on which the dissent relies. In *Martin* the court stated:

> We think apposite here the statement of this court in *In re Shaffer*, 229 F.2d 476, 480, 43 CCPA 758, 762:
>
> * * * a person having the references before him who was not cognizant of appellant's disclosure would not be informed that the problems solved by appellant ever existed. Therefore, can it be said that these references which never recognized appellant's problem would have suggested its solution? We think not, and therefore feel that the references were improperly combined since there is no suggestion in either of the references that they can be combined to produce appellant's result.

*Martin*, 372 F.2d at 562, 152 USPQ at 615. *Shaffer* was also quoted and followed in *In re Skoll*, 523 F.2d 1392, 1396, 187 USPQ 481, 484 (CCPA 1975), as was *Gershon*, showing that the CCPA saw no inconsistency between *Shaffer* and *Gershon*.

■ Indeed, 35 U.S.C. § 103 requires recognition of the context in which the invention was made. Comparison between the prior art and the subject matter as a whole can not be achieved if the desired utility, the problem for which a solution was sought, is excised from the analysis. *In re Graf*, 343 F.2d 774, 777, 145 USPQ 197, 199 (CCPA 1965):

> While a selection of certain facts in this case tend to a conclusion of nonobviousness and others taken alone may show obviousness, the conclusion required under section 103 must be grounded on a weighing of all the facts.... While merely for the purpose of obtaining uni-

formity of dyeing, the process may appear to be non-obvious, such a view does not accord weight to *all* the facts. Obviousness is not to be determined on the basis of purpose alone. [Emphasis in original.]

*In re Rothermel*, 276 F.2d 393, 397, 125 USPQ 328, 332 (CCPA 1960):

> Where the invention for which a patent is sought solves a problem which persisted in the art, we must look to the problem as well as to its solution if we are to properly appraise what was done and to evaluate it against what would be obvious to one having the ordinary skills of the art.

The vast precedent, well exceeding our sampling, contradicts the Solicitor's position that *prima facie* obviousness must be determined "regardless of the properties disclosed in the inventor's application." Indeed, the cases relied on by the Solicitor (and by the dissent hereto), as we shall discuss, do not support this position; they do, however, illustrate the evolution of the law, the fact-dependency of obviousness determinations, and the need to exercise judgment.

In *In re Stemniski*, 444 F.2d 581, 584–85, 170 USPQ 343, 346–47 (CCPA 1971), for example, the court focused on prior art compounds of closely related structure to the claimed compounds, where no significant properties or utility were disclosed for the prior art compounds, other than as intermediates. The court explained that the prior art provided no motivation to make the claimed compounds for applicant's purpose, although "one of ordinary skill would suppose the properties or potential uses of the two groups of compounds would be similar." *Id.* at 585, 170 USPQ at 347. The court in *Stemniski* observed that *In re Henze*, 181 F.2d 196, 85 USPQ 261 (CCPA 1950), and *In re Riden*, 318 F.2d 761, 138 USPQ 112 (CCPA 1963), held that structure alone could support a presumption of obviousness, and stated that:

> To the extent that *Henze* and *Riden* are inconsistent with the views expressed herein, they no longer will be followed, and are overruled.

*Id.* at 587, 170 USPQ at 348. *Henze* had already been limited to adjacent homologs of known compounds, *i.e.,* compounds differing by one methylene ($CH_2$) group, by the courts in *In re Mills,* 281 F.2d 218, 126 USPQ 513 (CCPA 1960) and *In re Elpern,* 326 F.2d 762, 140 USPQ 224 (CCPA 1964). *See Stemniski,* 444 F.2d at 584 n. 9, 170 USPQ at 346 n. 9. As the CCPA stated in *Mills,* 281 F.2d at 224, 126 USPQ at 518:

> Homology *per se* should, therefore, be treated as a chemist would treat it, being nothing more than a fact which must be considered with all other relevant facts before arriving at the conclusion of "obviousness" specified in 35 U.S.C. § 103.

See also *In re Shetty,* 566 F.2d 81, 86, 195 USPQ 753, 756 (CCPA 1977) (adjacent homolog held "structurally similar" to prior art compound, requiring evidence of actual difference of properties as to compound claim, but not for method claims), and *In re Ruschig,* 343 F.2d 965, 977, 145 USPQ 274, 285 (CCPA 1965), wherein the court said:

> What is important is the fact that the utility *discovered by the appellants* is not disclosed in the prior art. [Emphasis in original.][6]

The court in *In re Albrecht,* 514 F.2d 1389, 185 USPQ 585 (CCPA 1975) answered a question indistinguishable from that posed today by the Commissioner, stating:

> We are of the opinion that a novel chemical compound can be *nonobvious* to one having ordinary skill in the art notwithstanding that it may possess a known property in common with a known structurally similar compound. [Emphasis in original.]

*Id.* at 1395–96, 185 USPQ at 590. The *Albrecht* court emphasized the need to

> compar[e] the old and new compounds as wholes, inclusive of their properties.

*Id.* at 1394, 185 USPQ at 589, *citing Papesch, supra,* (a compound and its properties are inseparable).

The *Albrecht* court pointed out that the Solicitor was misinterpreting some of the CCPA's prior decisions, including *In re Mod,* 408 F.2d 1055, 161 USPQ 281 (CCPA 1969). The court in *Albrecht* observed that the properties discovered for the new compounds claimed in *Albrecht* were

> totally dissimilar to any activity previously disclosed for the prior art analogs. A newly discovered activity of a claimed

---

6. The dissent lists a number of cases cited by the majority, and implies that these cases are somehow inapt. The cases selected by the dissent cover several different section 103 considerations, and simply illustrate various applications of the law, as follows: *In re Fine,* 837 F.2d 1071, 1075–76, 5 USPQ2d 1596, 1600 (Fed.Cir. 1988) (although the temperature ranges of the prior art and the invention overlap, "the *purposes* of the two temperature ranges are entirely unrelated") (emphasis added); *In re Grabiak,* 769 F.2d 729, 732, 226 USPQ 870, 872 (Fed.Cir. 1985) (although similar utility was disclosed for the compounds of the prior art, no *suggestion* to combine references and no *prima facie* case was made) (emphasis added); *In re Lalu,* 747 F.2d 703, 707, 223 USPQ 1257, 1260 (Fed.Cir.1984) (no *prima facie* case because use of the prior art compounds as intermediates is "not *motivation* sufficient to support the structural obviousness rejection") (emphasis added); *In re Naber,* 494 F.2d 1405, 1407, 181 USPQ 639, 641 (CCPA 1974) ("no evidence that those skilled in the art were aware of the *problem* ... which is the primary objective of appellants' invention") (emphasis added); *In re Stemniski,* 444 F.2d 581, 586, 170 USPQ 343, 347 (CCPA 1971) ("of what significance is [a reasonable expectation of] similarities in significant properties or uses, if in fact no one prior to appellant's entry into the field knew what any of those properties or uses are?"); *In re Ruschig,* 343 F.2d 965, 977, 145 USPQ 274, 285 (CCPA 1965) ("the vague 'basket' disclosure of possible uses in the [prior art] are unimportant. What is important is the fact that the utility *discovered by the appellants* is not disclosed in the prior art.") (emphasis in original); *In re De Lajarte,* 337 F.2d 870, 875, 143 USPQ 256, 259 (CCPA 1964) ("If one were making a colorless glass free of carbon and sulfur, there would be little *reason* for using the [prior art] formula since it was primarily designed to enhance color stability") (emphasis added); *In re Elpern,* 326 F.2d 762, 767, 140 USPQ 224, 228 (CCPA 1964) (differences in the structural formulae between the compounds of the references and the claims "are *sufficient* to make appellant's compounds unobvious") (emphasis added); *In re Mills,* 281 F.2d 218, 221, 126 USPQ 513, 516–17 (CCPA 1960) (utility for the compounds of the prior art and the claims was identical, but there was no "legal presumption" of obviousness for a compound of a homologous series from a disclosure in the prior art of a non-adjacent member of the series) (emphasis added).

The dissent's position appears to be that precedent requires return to the overruled holdings of *Henze* and *Riden.*

novel compound which bears no material relationship to the activity disclosed for the prior art analogs is further evidence, not to be ignored, of the nonobviousness of the claimed invention.

*Id.* at 1396, 185 USPQ at 590.

■ Thus the CCPA established, and the Federal Circuit has followed, the general rule that similarity of structure alone does not make a *prima facie* case of obviousness; there must be some reason, arising in the prior art, to expect that the claimed compounds or compositions will have the properties found by the applicant. This rule finds pragmatic support in today's state of chemical science, wherein few new compounds are of such imaginative structure that "structurally similar" compounds are not to be found in the prior art.[7]

Since the Solicitor today cites *Mod* for the same principle for which *Mod* was criticized in *Albrecht*, we repeat the admonition that *Mod* must be understood "in a given factual setting". *Albrecht*, 514 F.2d at 1395, 185 USPQ at 589; *In re Lainson*, 339 F.2d 252, 254, 144 USPQ 19, 21 (CCPA 1964):

> The question of obviousness, however, is so closely tied to the facts of each particular case that prior decisions in cases involving different facts are ordinarily of little value in reaching a decision.

An example of the strong fact-dependence of § 103 decisions is seen in *In re Hoch*, 428 F.2d 1341, 166 USPQ 406 (CCPA 1970), a case relied on by the Solicitor. In *Hoch* the prior art disclosed utility of a known compound for treatment of plant diseases, and the court held that a *prima facie* case of obviousness was made as to applicant's use of a structurally similar analog as a herbicide. Stating that it was unclear whether there was a difference between use in treatment of plant diseases and use as a herbicide, the court required evidence of unexpected differences from the prior art compounds. *Id.* at 1343, 1344, 166 USPQ at 408–09, 409. But the court did

consider, in deciding whether a *prima facie* case had been made, the differences in structure and properties between the claimed compounds and those in the prior art "notwithstanding appellant's failure to establish actual differences in properties". *Id.* at 1344 n. 6, 166 USPQ at 409 n. 6. *See also Geiger*, 815 F.2d at 688, 2 USPQ2d at 1278 (holding that since a *prima facie* case of obviousness was not established, it was unnecessary to show unexpected results); and *compare In re Wilder*, 563 F.2d 457, 195 USPQ 426 (CCPA 1977) with *In re Wilder*, 429 F.2d 447, 166 USPQ 545 (CCPA 1970) (cases reaching contrary results as to composition and compound claims).

Another example of the strong fact-dependence of obviousness determinations is seen in *In re Heck*, 699 F.2d 1331, 1332–33, 216 USPQ 1038, 1039–40 (Fed.Cir.1983), where the issue related to the differing rates of wear between softer outer metal surfaces and harder inner metal surfaces on a camshaft (Heck's invention), and the weight and pertinence of a reference (Maybach) showing harder metal used to protect softer metal on a camshaft during grinding. Acknowledging that Maybach dealt with a different specific problem within the narrow subject matter of cast iron camshafts, the court found that the prior art was "very narrow, directly related to the automotive camshafts with which Heck's invention is concerned, and zeroes in on the difference in the wearing-away of hardened and less hardened materials of cams". *Id.* at 1333, 216 USPQ at 1040. The court considered the relation of Maybach's teachings to the problem confronting the inventor, including the problem solved by Maybach, and held that despite Maybach's different particular use, the broader disclosures of Maybach made Heck's use obvious. *Id.*

The Solicitor relies strongly on *In re Lintner*, 458 F.2d 1013, 173 USPQ 560 (CCPA 1972), in support of the rejection of Dillon's claims as *prima facie* obvious.

---

**7.** In 1980 the Supreme Court noted that over 4,848,000 chemical compounds had been listed by the Chemical Abstracts Service, and that the list was then growing at the rate of 350,000 compounds per year. *Dawson Chemical Co. v. Rohm & Haas Co.*, 448 U.S. 176, 221 n. 23, 100 S.Ct. 2601, 2626 n. 23, 65 L.Ed.2d 696, 206 USPQ 385, 407 n. 23 (1980).

The *Lintner* compositions were detergent compositions that contained, *inter alia,* a specific fabric softener and a sugar. The prior art showed detergent compositions that also contained a fabric softener and a sugar. The prior art described the sugar as a filler, whereas Lintner stated that his sugar improved compatibility. The court affirmed that Lintner's detergent compositions were *prima facie* obvious, concluding that "there is no departure from the prior art in terms of the result achieved by the addition of sugar." *Id.* at 1016, 173 USPQ at 563. *Lintner* is in accord with the main body of precedent, for the court looked to the result achieved by the applicant, and saw no difference compared with that shown in the prior art.

*Lintner* was placed in perspective in *Solder Removal Co. v. United States Int'l Trade Comm'n,* 582 F.2d 628, 635, 199 USPQ 129, 135 (CCPA 1978), wherein the court stated:

> The ALJ appears to have viewed arguments that an invention solved a problem not previously recognized, and that nonobviousness may be evidenced by discovery of a problem source, as irrelevant. That view would be incorrect. The ALJ appears also to have felt that where a practice is suggested by the prior art to solve one problem, a conclusion of nonobviousness cannot be supported on the ground that it also solves another problem, previously recognized or not. That position would be too broad. Where the reason for the practice suggested by the prior art is much less significant than the reason derived from the inventor's solution to another problem, the results may be so unexpected as to support a conclusion of nonobviousness. *Cf. In re Lintner,* 458 F.2d 1013, 59 CCPA 1004, 173 USPQ 560 (1972). [Citations omitted.]

That the use of similar compositions to solve different problems may be unobvious, while the use of similar compositions to solve similar problems may be obvious, depending on the particular circumstances, accommodates *Lintner's* facts as well as those of *Solder Removal.*

The Solicitor also relies on *In re Kronig,* 539 F.2d 1300, 190 USPQ 425 (CCPA 1976), a case that, like *Lintner,* turns on its facts. The appellants in *Kronig* claimed a process using a palladium/alkali metal/iron catalyst in an aqueous acetic acid system to produce allyl acetate. Various references showed the use of palladium catalysts containing alkali metal and iron compounds, and the use of palladium catalysts with aqueous acetic acid, the references disclosing that the inclusion of water and iron compounds served to increase yields and catalyst stability. Appellants argued that the prior art failed to disclose the addition of water to improve catalyst life; however, the court found that using water and an iron compound in the manner shown by the art suggested the appellant's result. *Id.* at 1304, 190 USPQ at 427. Indeed, it is hard to discern the reason for the Solicitor's emphasis on *Kronig,* which turns on the usual criterion of whether it would have been obvious to combine the elements of prior art references to achieve the result "suggested by" or "expected" from the teachings of the prior art. *Id.* at 1304, 190 USPQ at 428.

The other cases pressed by the Solicitor similarly turn on their facts. In *In re de Montmollin,* 344 F.2d 976, 145 USPQ 416 (CCPA 1965), the claimed invention was a new compound, described by the applicant as useful for dyeing wool and cotton. The reference showed structurally similar compounds and that they were useful for dyeing wool. The court concluded that the additional ability of the claimed compound to dye cotton was not "sufficient to render the subject matter as a whole unobvious". *Id.* at 979, 145 USPQ at 417–18.

This decision, like the others selected by the dissent as showing exceptions to the general rule, simply illustrates determination of the question of obviousness by comparing the differences between the structures and properties or uses taught in the art, and those disclosed by the applicant, including consideration of the problems solved, and making a judgment based on "all evidence of record". *Id.* at 978, 145 USPQ 417. *See, e.g., In re Lohr,* 317 F.2d 388, 392, 137 USPQ 548, 551 (CCPA 1963):

Considering all of the evidence in the record: the close structural similarity, the similar method of making the compounds, the similar properties, the same use, and the inconclusive showing of the affidavit, we are constrained to agree with the Board of Appeals that the claimed compounds and compositions are obvious in view of the prior art.

Despite the weight of precedent to the contrary, the Solicitor states that the correct law is as follows:

> [I]f the prior art suggests an inventor's compound or composition *per se*, that compound or composition would be *prima facie* obvious, regardless of the properties disclosed in the inventor's application.

Commissioner's brief at 24. We have illustrated precedent with decisions in the chemical arts, as appropriate to considering Dillon's invention. Nevertheless, applying similar reasoning to mechanical devices, the Commissioner asks the court to review its reasoning in *In re Wright*. *See* n. 4 *supra*. In *Wright* the court held patentable a new structure for a carpenter's level, having the new property and use of enhanced pitch-measuring capability. Although Wright's new structure was a combination of elements that were in the prior art, there was no suggestion in the prior art that this combination if made would have the property and use discovered by Wright. The court explained that there was no suggestion or motivation to make this combination in order to solve the problem of increasing pitch-measuring capability. *Wright*, 848 F.2d at 1220, 6 USPQ2d at 1962. The Solicitor expresses concern about the statement that it is appropriate to view the question of obviousness in light of the problem facing the inventor,[8] and states that *Wright* is "inconsistent, and

cannot be reconciled, with the *Mod, de Montmollin, Kronig* and other cases which have never been expressly overruled". (Footnote omitted.)

These cases, which we have discussed *ante*, illustrate how the court has treated different factual situations, based on the actual similarities and differences in structure and properties between the claimed compounds or compositions and the prior art. We join the CCPA in deploring "the formal exercise of squeezing new factual situations into preestablished pigeonholes". *In re Yates*, 663 F.2d 1054, 1056 n. 4, 211 USPQ 1149, 1151 n. 4 (CCPA 1981). *See also In re Shannon*, 356 F.2d 548, 551, 148 USPQ 504, 507 (CCPA 1966) (the facts of a prior decision "do not permit our determination there to be raised to a rule of law governing the factual situation here").

The weight of precedent provides a mainstream of consistent authority, applicable broadly to chemical compositions and mechanical devices. The decision in *Wright* does not depart from that mainstream. The CCPA has well explained the factual dependency of those decisions that tested the boundaries of the *prima facie* case. Review of *de Montmollin* and *Kronig* shows that these cases are not outside the mainstream, despite their factual specificity. In recognition of the vast range encompassed by human creativity, neither judges nor administrators can decree that all inventions will fit "into preestablished pigeonholes". *Yates, supra*. Authority establishes that all the facts, including both structure and utility, must be considered in determining whether a *prima facie* case has been made, as was done in *Wright*.[9]

C

■ Applying the guidance of precedent to Dillon's claimed tetra-orthoester fuel

---

8. The court stated: "The problem solved by the invention is always relevant. The entirety of a claimed invention, including the combination viewed as a whole, the elements thereof, and the properties and purpose of the invention, must be considered." *Wright*, 848 F.2d at 1219, 6 USPQ2d at 1962.

9. Apparently misperceiving the reasoning in *Wright*, *see* n. 5 *supra*, the dissent urges that

Wright be "forthrightly overruled". The dissent thus would overrule the reasoning in *Stratoflex, Lindemann, Grabiak, Payne, Weather Engineering, Orthopedic Equipment, Swan Wood, Gyurik, Cable, Deminski, Lalu, Fine, Geiger, Ratti, Hortman, Benno, Diversitech, Union Carbide, Rinehart, Sponnoble, Pye, Shaffer, Martin, Rothermel, Skoll*, all cited herein, and many others.

compositions: the compositions are new, and their property and use of reducing particulate emissions is not taught or suggested in the prior art. There is no objective teaching in the prior art that would have led one of ordinary skill to make the claimed compositions in order to solve the problem that was confronting Dillon. There is no reasonable basis in the prior art for expecting that Dillon's new compositions would have the particulate-reducing properties that she discovered. As we have discussed, structure, properties and use must be considered in determining whether a *prima facie* case of obviousness has been made.

The Commissioner suggests that whether Dillon's compositions are new compositions, or are known compositions used as water scavengers, in either case a *prima facie* case of obviousness is made as to Dillon's claims.[10] The Commissioner errs in drawing no distinction between new and known compositions. If the compositions are known, for any use or no use, they are not patentable as compositions, by force of 35 U.S.C. § 102. *Titanium Metals Corp. v. Banner,* 778 F.2d 775, 780, 227 USPQ 773, 777–78 (Fed.Cir.1985); *Wilder,* 429 F.2d at 450, 166 USPQ at 548 ("claims cannot be obtained to that which is not new"). Only if the compositions are new may they be patentable, if the requirements of section 103 are met. (As discussed *post,* known as well as new compositions may be the subject of method claims under 35 U.S.C. § 100(b).)

Dillon raises the question of whether the Sweeney and Elliott references are properly combinable, that they are not in analogous arts. We need not decide this question, for even when combined these references offer no recognition of a solution to the problem of reducing particulate-emissions from combustion. *See In re Naber,* 494 F.2d 1405, 1407, 181 USPQ 639, 641 (CCPA 1974) ("even if one of ordinary skill

in the art were moved to combine the references, there would be no recognition that the problem of combustible deposits had been solved").

■ The Board stated that it is inherent in Dillon's compositions that they would reduce particulate emissions, that Dillon "merely recited a newly discovered function inherently possessed" by the prior art. The courts have not upheld arguments based on "inherent" properties when there is no supporting teaching in the prior art. Inherency and obviousness are distinct concepts. *W.L. Gore & Associates, Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1555, 220 USPQ 303, 314 (Fed.Cir.1983), *cert. denied,* 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984); *In re Spormann,* 363 F.2d 444, 448, 150 USPQ 449, 452 (CCPA 1966) ("the inherency of an advantage and its obviousness are entirely different questions. That which may be inherent is not necessarily known. Obviousness cannot be predicated on what is unknown.") When the PTO asserts that there is an explicit or implicit teaching or suggestion in the prior art, the PTO must produce supporting references. *Yates,* 663 F.2d at 1057, 211 USPQ at 1151.

The Board required Dillon to show unobvious particulate-reduction properties of her tetra-orthoester compositions over her own teaching that the tri-orthoester compositions have the property of reducing particulates, not over any prior art teaching. This requirement has been improper since the CCPA held in *In re Ruff,* 256 F.2d 590, 598, 118 USPQ 340, 347 (CCPA 1958), that:

> To rely on an equivalence *known only to the applicant* to establish obviousness is to assume that his disclosure is a part of the prior art. The mere statement of this proposition reveals its fallaciousness. [Emphasis in original.]

*See also In re Wertheim,* 541 F.2d 257, 269, 191 USPQ 90, 102 (CCPA 1976) (applicant's own disclosures can not be used to

---

10. Although the dissent states that the issue raised by the Board's decision is not whether a *prima facie* case was made by the prior art, the Commissioner's brief states: "The claimed subject matter would have been *prima facie* obvious from the combined teachings of the references". It was on this basis that the Board searched Dillon's specification for unobvious results between the two classes disclosed by Dillon, the tri- and tetra-orthoesters. (Only the tetra-orthoesters are claimed herein.)

support a rejection of the claims "absent some admission that matter disclosed in the specification is in the prior art").

The Solicitor raises the argument that Dillon is simply removing from the public an obvious variant of Sweeney's tri-or-thoester compositions, presumably a variant that might be useful to scavenge water in fuels. To the extent that this argument raises policy considerations, the patentability of a new composition having a new and unobvious utility is firmly established in precedent, and the policy of a statute that authorizes such patentability has been tested and proven over decades of experience. Patentability is decided by applying the law to the facts specific to each case; this reasoned approach long ago transcended deciding the question of obviousness as a matter of immutable policy. In *Mills*, 281 F.2d at 222–23, 126 USPQ at 517, the court cautioned again against "the observed tendency of the Patent Office to freeze into legal rules of general application what, at best, are statements applicable to particular fact situations."

Granting Dillon a patent on her new compositions, based on her discovery of a new and unobvious property and utility, takes away nothing that the public already has. *See Ruschig*, 343 F.2d at 979, 145 USPQ at 286 (favoring the provision of adequate patent protection for applicant's compounds over the "mere possibility that someone might wish to use some of them for some such purpose" unrelated to applicant's purpose). The public receives not only the knowledge of Dillon's discovery, for abandoned patent applications are maintained in secrecy, but Dillon is not deprived of an incentive to commercialize this new product for this new use. The statute, and underlying policy, do not bar Dillon from patenting her invention simply because her new compositions might also possess a property shared by a known composition.

There is merit to the classical explanation that the incentive to study new variations of known compounds and compositions, in order to search for new uses, would be diminished if such *new* compounds and compositions can not be patent-ed despite discovery of new and unobvious properties. The contrary view carries scant counter-balancing public benefit. Nor is it in accord with the weight of CCPA and Federal Circuit precedent.

We conclude that the prior art does not constitute a *prima facie* case of obviousness of Dillon's compositions. Since Dillon's claimed invention meets the statutory criteria of patentability, the rejection of composition claims 2–14, 16–22, and 36–37 is reversed.

II

*The Method Claims*

■ The Board drew no distinction between patentability of Dillon's composition and method claims. At oral argument the Solicitor, responding to a question from the bench, stated that Dillon has no way of claiming her invention, either as a new composition or as a new use, despite the absence of prior art pertinent to Dillon's use. The Solicitor stated: "I don't know how to suggest an allowable claim apart from any other art that might exist in this particular case."

A new use of a composition is claimed in the form of a process or method. This style of claiming was codified in 35 U.S.C. § 100(b):

The term "process" means process, art or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material.

*See In re Fong*, 288 F.2d 932, 933, 129 USPQ 264, 266 (CCPA 1961) ("because the law does not permit the claiming of such an invention in terms of use, the claims are directed to a process ... or a composition ..., conventional and recognized ways of claiming inventions predicated on the discovery of a new use"); *In re Moreton*, 288 F.2d 708, 709, 129 USPQ 227, 228 (CCPA 1961) ("This mere matter of form [*i.e.*, claiming a new use as a method] should have no effect on patentability.") This claim form applies to a newly discovered use of a composition, whether a known or new composition. *See generally* 1 D. Chisum, *Patents*, § 1.03[8][c] at 1–174 to –179

(1989) and 2 D. Chisum, *Patents*, § 5.04[8][a] at 5–359 to –365 (1989); 2 E. Lipscomb, *Walker on Patents*, § 6:54 at 340 to 342 (1985).

The only question for the decisionmaker is whether the claimed method of use would have been obvious to a person of ordinary skill in the field of the invention. In evaluating the patentability of Dillon's method claims it is not pertinent whether the compositions themselves are known or new or unobvious. The issue is solely whether the utility discovered by Dillon, the reduction of particulate emissions from combustion, would have been obvious in light of the prior art.

Perhaps recognizing the dearth of prior art before the Board as to the method claims, the Solicitor argues on appeal, for the first time, that Dillon's method claims are drawn simply to combustion. The Solicitor states that it would have been obvious to combust Dillon's fuel composition, even if the composition itself and its properties would not have been obvious. As support the Solicitor cites *In re Durden*, 763 F.2d 1406, 226 USPQ 359 (Fed.Cir. 1985), wherein the court held that the substitution of new reactants into a well known chemical process of making carbamate compounds did not, in that case, render unobvious the chemical reaction itself, which, except for the specific reactants, was disclosed in a reference.

The holding in *Durden* does not support the Commissioner's thesis. *Durden's* process claim was not to a new method of use, but to a known process of making a compound. Dillon is not claiming a chemical reaction; she is claiming a new use of a composition, in the form of method claims. Dillon's invention is not a new process of combustion, but a new method of reducing particulates from combustion. After decades of this style of claiming a new use as a method, the Commissioner's position that the claims are unpatentable because "[t]he principal use of any fuel is combustion" is frivolous.

No reference or combination of references describes or suggests the use of *any* orthoester to reduce particulates in combustion of hydrocarbon fuels. Indeed, Dillon has consistently objected to the Board's attempt to compare her invention with her own disclosure. Dillon simply takes the position that her invention of particulate reducing compositions and method is unexpected as compared with the prior art, because nothing in the prior art teaches or suggests it. Considering Dillon's method claims, prior art that neither teaches nor suggests the use of these compositions to reduce particulate emissions in combustion is inadequate to make a *prima facie* case of obviousness.

The Board cited *In re Merck & Co., Inc.*, 800 F.2d 1091, 1097, 231 USPQ 375, 379 (Fed.Cir.1986), in arguing that obviousness does not require absolute predictability. Obviousness does, however, require some relationship between the use taught in the reference and the use discovered by the applicant. In *Merck* the reference compound and the claim compound were both known, and the uses were similar; the court held that the claimed use would be expected *prima facie* in light of the known use of the reference compound. Applying this reasoning to Dillon's claims leads to the opposite conclusion, for Dillon's use is unrelated to the known utility of the prior art compositions. *See, e.g., In re May*, 574 F.2d 1082, 1093, 197 USPQ 601, 610 (CCPA 1978) (claims to use as non-addictive analgesics for May's compounds held unobvious from the known use of the prior art compounds as addictive analgesics, in view of the unpredictable nature of this property).

We conclude that a *prima facie* case of obviousness as to the method claims has not been made. The rejection of claims 24–35 is reversed.

### Conclusion

The rejection of claims 2 through 14, 16 through 22, and 24 through 37 is REVERSED.

ARCHER, Circuit Judge, dissenting.

The majority reverses the Board's decision solely because in its view *prima facie*

obviousness under 35 U.S.C. § 103 (1982 & Supp. IV) can never be established when the specific problem and use described by the inventor are not addressed or suggested in the prior art.[1] In this case, the prior art clearly would have motivated or taught the skilled artisan to produce the composition and method claimed by Dillon and, due to the absence of evidence showing non-obviousness, the Board determined, correctly in my view, that Dillon's invention was not patentable. I therefore dissent.

Preliminarily, I disagree with the way that the majority has framed the issue presented in this appeal. The majority opinion states that "[t]he threshhold question is whether, under such circumstances, a *prima facie* case of unpatentability for obviousness is deemed made." Maj. at 1557. As this court has made clear, "[t]he concept of *prima facie* obviousness in *ex parte* patent examination is but a procedural mechanism to allocate in an orderly way the burdens of going forward and of persuasion as between the examiner and the applicant." *In re Piasecki*, 745 F.2d 1468, 1471–72, 223 USPQ 785, 787–88 (Fed.Cir. 1984). This being so, once the full evidentiary record is established, as it is before the Board and on appeal to this court, the presumptions associated with the intermediate procedural burdens drop from the case, and the decisionmaker must focus solely upon the ultimate question to be decided. *Id.* at 1472–73, 223 USPQ at 788; *In re Rinehart*, 531 F.2d 1048, 1052, 189 USPQ 143, 147 (CCPA 1976); *cf. United States Postal Serv. Board of Governors v. Aikens*, 460 U.S. 711, 714–17, 103 S.Ct. 1478, 1481–83, 75 L.Ed.2d 403 (1983) (in discrimination cases under Title VII the *prima facie* case method is a procedural device for the orderly production of evidence, but once the evidentiary record is established it is error to focus solely "on the question of *prima facie* case rather than directly on the question of discrimination."). Accordingly, the issue here is not whether a *prima facie* case was made, but rather whether Dillon's claimed composition and method would have been obvious on the record as a whole.

The facts underlying this appeal are set forth in the majority's opinion and will not be repeated here. The claimed composition and method are suggested by the prior art, albeit for a reason different from that which Dillon has disclosed.[2] Under the rationale identified by the examiner and affirmed by the Board, the prior art taught adding tetra-orthoesters to hydrocarbon fuels for the purpose of scavenging water prior to combustion, whereas Dillon was concerned with reducing the amount of particulate emissions produced by the combustion of the same fuels.

Under 35 U.S.C. § 103 it is the claimed composition which must be patentable, not the motivation or subjective idea upon which that composition is based. *Jones v. Hardy*, 727 F.2d 1524, 1527–28, 220 USPQ 1021, 1024 (Fed.Cir.1984). Accordingly, an additional or different reason for doing what the prior art suggests should be done does not prevent a conclusion that a claimed invention would have been obvious to one skilled in the art. *In re Kronig*, 539 F.2d 1300, 1304, 190 USPQ 425, 427–28 (CCPA 1976) ("Appellants further allege that the effect of water addition which they disclose (to lengthen the service life of the catalyst) is different from the effect of water addition disclosed in Yasui et al. Nevertheless, Yasui et al. provide ample motivation to add water in order to increase product yields, and *we do not view*

---

1. The majority states: "There is no objective teaching in the prior art that would have led one of ordinary skill to make the claimed combinations *in order to solve the problem that was confronting Dillon.* There is no reasonable basis in the prior art for expecting that Dillon's new compositions would have the particulate-reducing properties that she discovered." Maj. at 1568 (emphasis added).

2. Dillon challenges the combination of the Sweeney and Elliott patents arguing that be-

cause Elliott deals with the dewatering of hydraulic fluids rather than hydrocarbon fuel, its teachings are related to a nonanalogous art area. Dillon's argument is unavailing here because Elliott's teachings are related to solving a problem Sweeney has indicated is pertinent to the hydrocarbon fuel art. *See In re Deminski*, 796 F.2d 436, 442, 230 USPQ 313, 315 (Fed.Cir. 1986); *cf. In re Kronig*, 539 F.2d 1300, 1303–04, 190 USPQ 425, 427 (CCPA 1976).

*the rejection as deficient merely because the appellants allege a different advantage resulting from the addition of water.... [I]t is sufficient here that Yasui et al. clearly suggests doing what appellants have done, viz., adding water."* (emphasis added)); *In re Lintner,* 458 F.2d 1013, 1016, 173 USPQ 560, 562 (CCPA 1972) ("The fact that appellant uses sugar for a different purpose does not alter the conclusion that its use in a prior art composition would be prima facie obvious *from the purpose disclosed in the references."* (emphasis added)) [3]; *see also In re Heck,* 699 F.2d 1331, 1333, 216 USPQ 1038, 1040 (Fed.Cir.1983) ("[I]t would have been obvious to those skilled in the art to use them together when a differential in wearing away quality was desired, *even though appellant's particular purpose was different from that of [the prior art]."* (emphasis added)); *In re Graf,* 343 F.2d 774, 777, 145 USPQ 197, 199 (CCPA 1965) ("Obviousness is not to be determined on the basis of purpose alone.").

Obviousness is determined not on the basis of argument, but on evidence produced in the record. *See In re De Blauwe,* 736 F.2d 699, 705, 222 USPQ 191, 196 (Fed.Cir. 1984). Hence, when the examiner has shown that the prior art suggests the claimed invention for a particular purpose, the applicant cannot upset that showing merely by asserting, without proof, that the purpose behind or the properties of the claimed invention are different. Instead, it is necessary for the applicant to demonstrate by evidence of nonobviousness, such as unexpected novel or greatly enhanced results, commercial success, long felt need, etc., that the claimed invention would not have been obvious to the skilled artisan. In *In re Lintner* the court stated:

> The fact that appellant uses sugar for a different purpose does not alter the conclusion that its use in a prior art composition would be *prima facie* obvious from the purpose disclosed in the references.
>
> Differences between a patent applicant's and the prior art's motivation for adding an element to a composition may be reflected in the composition ultimately produced. A claimed composition may possess unexpectedly superior properties or advantages as compared to prior art compositions. *In this way, the conclusion of prima facie obviousness may be rebutted and the claimed subject matter ultimately held to be legally nonobvious.*

458 F.2d at 1016, 173 USPQ at 562 (CCPA 1972) (emphasis added). *See also* 2 D. Chisum, Patents, § 5.04[6] at 5–325 (1989) ("The fact that the prior art 'suggests' the modification for a different purpose is irrelevant to the issue of prima facie obviousness though it is relevant to rebuttal of prima facie obviousness.").

In addition, the specific problem facing the applicant need not be recognized in all cases by the prior art before obviousness may be established.[4] In *In re Gershon,*

---

**3.** The majority attempts to avoid the holding of *Lintner* by characterizing its facts as being accommodated by *Solder Removal Co. v. United States Int'l Trade Comm'n,* 582 F.2d 628, 635, 199 USPQ 129, 135 (CCPA 1978), which required a weighing and balancing of all the facts, including the significance of the problem suggested by the prior art versus the inventor's solution to another problem ("where the results may be so unexpected as to support a conclusion of nonobviousness") in making the ultimate determination with respect to obviousness. Maj. at 1565–66. *Kronig, Lintner,* and *Heck* are each consistent with the weighing or balancing approach articulated in *Solder Removal.* While appearing to adopt that approach by citing and quoting from *Solder Removal,* the majority instead holds that the only suggestion or motivation from the prior art which can be sufficient to establish even a *prima facie* case of obviousness is that which Dillon says was instrumental to her discovery of the claimed invention. See quote from majority opinion in footnote 1, *supra.*

**4.** The majority notes that the discovery of the source of a problem plaguing the prior art is a part of the "subject matter as a whole" to be considered in determining obviousness, citing *In re Sponnoble,* 405 F.2d 578, 585, 160 USPQ 237, 243 (CCPA 1969). Maj. at 1562. *See also Eibel Process Co. v. Minnesota & Ontario Paper Co.,* 261 U.S. 45, 67–68, 43 S.Ct. 322, 329–30, 67 L.Ed. 523 (1923). That doctrine has no application in this case, however, where Dillon has not indicated that she has discovered the source of the particulate emission problem, thereby making its solution simple. *See* 2 D. Chisum, Patents, § 5.04[7] at 5–353 (1989) ("The *Eibel* doctrine applies only where the inventor has dis-

372 F.2d 535, 152 USPQ 602 (CCPA 1967), the court stated:

> Although the cited prior art does fail to disclose or suggest either the existence of appellants' problem or its cause, we cannot agree that the art does not teach or suggest a solution to the problem. The cited art, especially the Gershon article, unquestionably teaches the superiority of "buffered acidic fluoride solutions" in effectively reducing dental enamel solubility *in vitro*. We think that one of ordinary skill in the dentifrice art would thus be persuaded to use buffered acidic fluoride dentifrices for the purpose of reducing dental enamel solubility *in vivo*. Such obvious use of buffered dentifrices would *inherently* provide a solution to appellants' problem, even though an adequate theoretical explanation of the reason why incorporation of buffering agents in acidic fluoride dentifrices achieves superior RES values is not found in the cited art. We think it is sufficient that the prior art clearly suggests doing what the applicants have done, although an underlying explanation of exactly why this should be done, other than to obtain the expected superior beneficial results, is not taught or suggested in the cited references.[5]

*Id.* at 538–39, 152 USPQ at 605 (emphasis in original). In the present case, the use of tetra-orthoesters as water scavengers in fuel mixtures as suggested by Sweeney and Elliott would have inherently solved Dillon's problem concerning particulate emissions.

Dillon's specification sets forth several examples that must be considered in making the obviousness determination. These examples are especially pertinent here because they provide a comparison between a composition disclosed by the Sweeney reference alone (although Dillon apparently was not aware of this reference, having originally claimed that same composition) and the composition encompassed by Dillon's claims and thus could provide evidence showing the nonobviousness of Dillon's invention. In Examples III through XII, trimethyl-orthoacetate (an orthoester of the formula taught by Sweeney) was shown to reduce the amount of particulate emissions from #2 diesel fuel by 14.61, 10.26, 29.90, 18.57, 12.01, 18.09, 11.30, (0), 27, and 27 percent, respectively. In Examples XIII through XVIII, tetra-methyl-orthocarbonate (a claimed tetra-orthoester) reduced particulate emissions by only 6.7, 7.9, 10.8, 16.6, 12.8, and 10.3 percent, respectively. This evidence, as the Board found, does not tend to prove the nonobviousness of the claimed invention. It, instead, shows only that a composition within Sweeney's disclosure tends to exhibit an even greater particulate-reducing ability than does the composition Dillon claims.

Accordingly, in light of the suggestion in the art to employ tetra-orthoesters as water scavengers in fuel mixtures and the absence of any evidence of nonobviousness, the Board's holding that Dillon's composition and method[6] claims are unpatentable is correct and should be affirmed.

The cases regarding the obviousness of chemical compounds cited by the majority do not require a contrary result. The majority erroneously states that "a *prima facie* case of obviousness is not deemed made unless both (1) the new compound or composition is structurally similar to the reference compound or composition and (2)

covered the *source* of a *recognized* problem." (emphasis in original)).

**5.** The majority points to *In re Shaffer,* 229 F.2d 476, 480, 108 USPQ 326, 329 (CCPA 1956), to suggest that the problem confronting the inventor must be addressed by the prior art in order for obviousness to be established. Maj. at 1563. *Shaffer,* however, is easily distinguished from this case. In *Shaffer,* the court found that the prior art did not suggest the equivalency between the amplifiers of the primary and secondary references. *Id.* at 479, 108 USPQ at 328–29.

Accordingly, there was no suggestion to replace the amplifier of the primary reference with that of the secondary art. In this case, however, it is beyond dispute that Elliott teaches the equivalency between tri- and tetra-orthoesters as water scavengers.

**6.** Dillon's method claims consist solely of the process of combusting the fuel mixture of her composition claims. Since the utility of Sweeney mixtures is as a fuel, combustion of the Sweeney/Elliott mixture would also have been obvious to the skilled artisan.

there is some suggestion or expectation in the prior art that the new compound or composition will have the same or similar utility as discovered by the applicant," citing, among others, *In re Grabiak*, 769 F.2d 729, 731, 226 USPQ 870, 871 (Fed.Cir.1985); *In re Rosselet*, 347 F.2d 847, 850, 146 USPQ 183, 185 (CCPA 1965); *In re Chupp*, 816 F.2d 643, 645–46, 2 USPQ2d 1437, 1439 (Fed.Cir.1987); *In re Payne*, 606 F.2d 303, 314, 203 USPQ 245, 254–55 (CCPA 1979); and *In re Swan Wood*, 582 F.2d 638, 641, 199 USPQ 137, 139 (CCPA 1978). *See* Maj. at 1560. These cases, however, do not support the second prong of the stated test. In *Grabiak* the court reversed the Board's decision because it found lacking a sufficient structural similarity between the known and claimed compounds upon which to support the examiner's rejection. There was no holding regarding the utility of the claimed and referenced compounds. While in *Rosselet, Payne,* and *Swan Wood* the claimed and known compounds were of similar utility, this fact served only to confirm the inference of fact that the claimed compound would have been obvious based on its structural likeness to a useful prior art compound. *See Chupp*, 816 F.2d at 646, 2 USPQ2d at 1439; *In re Mills*, 281 F.2d 218, 223, 126 USPQ 513, 517 (CCPA 1960). The similarity in utility between the two compounds was not a teaching taken from the prior art. Likewise, in *Chupp*, the fact that the claimed and prior art compounds were both herbicides cannot be transformed into a requirement that in all cases the examiner can only base his obviousness determinations on compounds having the same or similar utility as that claimed by the applicant.

In *In re Papesch*, 315 F.2d 381, 137 USPQ 43 (CCPA 1963), a most often cited chemical obviousness case, the court reversed the rejection of the applicant's claims because the Board had failed to consider evidence that the claimed compounds exhibited unexpected advantageous properties not possessed by the related compounds of the prior art. *Id.* at 391, 137 USPQ at 51. Indeed, such evidence, when of record, must always be considered by the examiner. The *Papesch* holding, however, does not mean that obviousness cannot be predicated on the structural likeness of the claimed invention to known useful compounds.

The additional cases cited by the majority are consistent with *Papesch*. In *In re Albrecht*, 514 F.2d 1385, 185 USPQ 590 (CCPA 1975), the CCPA held that a *prima facie* case of structural obviousness had been established notwithstanding that the claimed novel compound was disclosed for a *totally different utility* as compared to the referenced compound (local anesthetic versus antiviral agent).[7] In this case, the claimed compounds were ultimately held to be nonobvious, but only after the examiner's obviousness rejection was *rebutted* by *evidence* that the novel compounds actually possessed unexpected properties not exhibited by those disclosed in the cited reference.

*In re Fine*, 837 F.2d 1071, 5 USPQ2d 1596 (Fed.Cir.1988); *In re Lalu*, 747 F.2d 703, 223 USPQ 1257 (Fed.Cir.1984); *In re Grabiak*, 769 F.2d 729, 226 USPQ 870 (Fed. Cir.1985); *In re Naber*, 494 F.2d 1405, 181 USPQ 639 (CCPA 1974); *In re Stemniski*, 444 F.2d 581, 170 USPQ 343 (CCPA 1971); *In re Ruschig*, 343 F.2d 965, 145 USPQ 274 (CCPA 1965); *In re De Lajarte*, 337 F.2d 870, 143 USPQ 256 (CCPA 1964); *In re Elpern*, 326 F.2d 762, 140 USPQ 224 (CCPA 1964); and *In re Mills*, 281 F.2d 218, 126 USPQ 513 (CCPA 1960), do not hold otherwise. Although in each of these cases the court reversed the Board's decision that the claimed inventions would have been obvious, it did so because there was no suggestion in the art whatsoever to produce the claimed invention. Not one of these cases stands for the proposition advanced by the majority that a validly suggested reason for producing the claimed

---

7. This flatly contradicts the majority's holding that in order to establish "a *prima facie* case of obviousness[,] there must be some reason, arising in the prior art, to expect that the claimed compounds or compositions will have the properties found by the applicant." Maj. at 1565. The prior art relied upon in *Albrecht* clearly gave no such an expectation, yet the court expressly indicated that obviousness, at that stage of the prosecution, had been established.

invention is insufficient for the purposes of section 103 because it does not address the problem of the inventor or because the prior art does not disclose or predict the alleged but unproven benefits of the claimed invention.[8]

In sum, the myriad of chemical obviousness cases cited by the majority stand only for the unremarkable proposition that a novel compound may be unpatentable when it is shown to be structurally similar to another known and useful compound. In such a case, the inference of obviousness may be overcome by a showing by the applicant that the claimed compound actually *"possesses* unobvious or unexpected beneficial properties *not actually possessed* by the prior art [structurally similar compound]." *In re Mills,* 281 F.2d at 222, 126 USPQ at 516 (partial emphasis added). These cases do not, however, require or suggest, as the majority holds, that chemical obviousness can only be predicated on prior art compounds which have the same or similar utility as the claimed compound. *See In re Albrecht,* 514 F.2d at 1388, 185 USPQ at 593.

Lastly, the majority cites the decision of this court in *In re Wright,* 848 F.2d 1216, 6 USPQ2d 1959 (Fed.Cir.1988), in support of its decision. While *Wright*[9] supports the result the majority reaches in this case, I do not find comfort in this fact because *Wright,* in my view, is in direct conflict with our precedent.[10] As shown *ante,* that precedent does not make the subjective motivation or purpose disclosed by the inventor for producing the claimed invention an overriding factor in determining whether obviousness can be established from the teachings of the prior art. In *Wright,* the court held that although the prior art suggested the claimed invention for one purpose, because it did not suggest the invention for Wright's purpose or as a solution to the problem confronting him, it did not establish *prima facie* obviousness of the claimed invention. Such a holding is based solely on subjective criteria and is wholly at odds with the objective evidence-based analysis required by 35 U.S.C. § 103 and with the decisions of the CCPA and this court which disregard the mere articulation of the purpose or motivation behind the invention insofar as obviousness is concerned.

Consequently, because a panel of this court is without power to overrule the bind-

---

8. In *Lalu, Naber, Stemniski* and *Ruschig,* the court indicated that structural obviousness could not be established where the prior art disclosed no utility whatsoever (or other than as an intermediate in a chemical process) for the referenced compound. These holdings do not support the majority's holding that the prior art must show the *same or similar* utility as does the applicant for the claimed invention in order to establish obviousness. On the contrary, the lack of disclosed utility in these cases may be likened to the lack of any reason or suggestion to combine various prior art teachings in a typical "reason to combine" case. In a "reason to combine" case, there must be *"some"* teaching or suggestion to combine the prior art. *See Uniroyal, Inc. v. Rudkin–Wiley Corp.,* 837 F.2d 1044, 1051, 5 USPQ2d 1434, 1438 (Fed.Cir.1988). Likewise, in structural obviousness cases, "some" utility for the referenced compound is sufficient to infer obviousness. *In re Albrecht,* 514 F.2d at 1388.

9. *Wright* has been cited by this court in *Diversitech Corp. v. Century Steps, Inc.,* 850 F.2d 675, 679, 7 USPQ2d 1315, 1318 (Fed.Cir.1988), and *In re Newell,* 891 F.2d 899, 902 (Fed.Cir.1989). These cases are distinguishable from this one because of either the existence of considerable objective evidence of nonobviousness or the lack of any suggestion in the prior art for the claimed invention. Thus, *Wright's* preclusion of obviousness where the inventor's problem and properties were not addressed or disclosed by the prior art was not in issue.

10. The majority states that I have "misperceiv[ed] the reasoning in *Wright"* and would overrule some 25, or more, prior holdings of this and our predecessor court. Slip op. at 30 n. 9. Contrary to the majority's view, however, it is the reasoning in *Wright* which represents the departure from our prior jurisprudence. *See* Adelman, *Patent Law Perspectives,* § 2.6[1], 2–406.2 (1989) ("In *In re Wright* [ ] the Federal Circuit wrongly failed to properly balance expected and unexpected properties in connection with a mechanical invention."); Rollins, *"PTO Practice: Was Wright Wrong?",* 71 J.Pat. & Tm. Off.Soc. 39 (1989) (*Wright* "diverges from prior precedent in a manner which, if intentional, represents a rather substantial change in the law."; Kayton, *Patent Practice,* 5–36 (4th ed. 1989) ("The highwater mark in the law of what is and is not prima facie obvious is *In re Wright....*"); Brantley, *Patent Law Handbook,* 231–35 (1989–90) (*Wright* provides a "new approach[ ] to arguments attempting to rebut a rejection under section 103.").

ing precedent of this court and its predecessors, the decision in *Wright* does not control this appeal and merits no following. It should be limited to its facts if not forthrightly overruled.

I would affirm the Board's decision.